# United States Court of Appeals for the Federal Circuit

---

**ADOLFO R. ARELLANO,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1073

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-3908, Judge Michael P. Allen.

---

Decided: June 17, 2021

---

JAMES R. BARNEY, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, argued for claimant-appellant. Also represented by ALEXANDER EDISON HARDING, KELLY HORN.

BARBARA E. THOMAS, Commercial Litigation Branch, Civil Division, United States Department of Justice, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, MARTIN F. HOCKEY, JR., ANDREW JAMES HUNTER; CHRISTINA LYNN GREGG, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

MELANIE L. BOSTWICK, Orrick, Herrington & Sutcliffe LLP, Washington, DC, for amicus curiae Military-Veterans Advocacy Inc. Also represented by ANNE SAVIN; JOHN B. WELLS, Law Office of John B. Wells, Slidell, LA.

JILLIAN BERNER, UIC John Marshall Law School Veterans Legal Clinic, Chicago, IL, for amicus curiae National Law School Veterans Clinic Consortium.

LIAM JAMES MONTGOMERY, Williams & Connolly LLP, Washington, DC, for amici curiae National Organization of Veterans' Advo-cates, Inc., National Veterans Legal Services Program. Also represented by DEBMALLO SHAYON GHOSH, ANNA JOHNS HROM; BRIAN WOLFMAN, Georgetown Law Appellate Courts Immersion Clinic, Washington, DC.

HANNAH LAUREN BEDARD, Kirkland & Ellis LLP, Washington, DC, for amicus curiae Charles J. Raybine. Also represented by WILLIAM H. BURGESS.

PAUL WRIGHT, Marietta, SC, as amicus curiae, pro se.

―――――――――――

Before MOORE, *Chief Judge*\*, NEWMAN, LOURIE, DYK, PROST\*\*, O'MALLEY, REYNA, WALLACH\*\*\*, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges*.

Opinion for the court filed PER CURIAM.

―――――――――――

\*    Chief Judge Kimberly A. Moore assumed the position of Chief Judge on May 22, 2021.

\*\*    Circuit Judge Sharon Prost vacated the position of Chief Judge on May 21, 2021.

\*\*\*    Circuit Judge Evan J. Wallach assumed senior status on May 31, 2021.

Concurring opinion filed by CHEN, *Circuit Judge*, in which MOORE, *Chief Judge*, and LOURIE, PROST, TARANTO, and HUGHES, *Circuit Judges*, join.

Concurring opinion filed by DYK, *Circuit Judge*, in which NEWMAN, O'MALLEY, REYNA, WALLACH, and STOLL, *Circuit Judges*, join.

PER CURIAM.

Upon consideration en banc, a unanimous court holds that equitable tolling is not available to afford Mr. Arellano an effective date earlier than the date his application for benefits was received.

The court is equally divided as to the reasons for its decision and as to the availability of equitable tolling with respect to 38 U.S.C. § 5110(b)(1) in other circumstances. The effect of our decision is to leave in place our prior decision, *Andrews v. Principi*, 351 F.3d 1134 (Fed. Cir. 2003), which held that principles of equitable tolling are not applicable to the time period in 38 U.S.C. § 5110(b)(1).

Accordingly, the judgment of the United States Court of Appeals for Veterans Claims is affirmed.

**AFFIRMED**

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

---

**ADOLFO R. ARELLANO,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1073

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-3908, Judge Michael P. Allen.

---

Decided: June 17, 2021

---

CHEN, *Circuit Judge*, with whom MOORE, *Chief Judge*, and LOURIE, PROST, TARANTO, and HUGHES, *Circuit Judges*, join, concurring in the judgment.

By statute, the "effective date of an award" of disability compensation to a veteran "shall not be earlier than the date" the veteran's "application" for such compensation is received by the Department of Veterans Affairs (VA). 38 U.S.C. § 5110(a)(1). Section 5110(b)(1), however, provides an exception that permits an earlier effective date if the VA receives the application within one year of the veteran's discharge from military service: under such

circumstances, the effective date of the award shall date back to "the day following the date of the veteran's discharge or release." *Id.* § 5110(b)(1). This case poses the question of whether, under an equitable-tolling theory, an award on an application received more than one year after the veteran's discharge date may still be accorded an effective date of the day after discharge. Specifically, we consider whether the rebuttable presumption of equitable tolling for statutes of limitations established in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), applies to the one-year period in § 5110(b)(1).

This question arises from Adolfo R. Arellano's appeal from a decision of the Court of Appeals for Veterans Claims (Veterans Court) denying him an effective date earlier than the date his disability benefits application was received by the VA. Though Mr. Arellano filed his application more than 30 years after he was discharged from the Navy, he argues that § 5110(b)(1)'s one-year period should be equitably tolled in his case to afford his award an earlier effective date (and his compensation an earlier starting date) reaching back to the day after his discharge from service.

Mr. Arellano also urges us to overrule our prior decision in *Andrews v. Principi*, which held that § 5110(b)(1) is not a statute of limitations amenable to equitable tolling but merely establishes an effective date for the payment of benefits, thereby categorically foreclosing equitable tolling under this provision. 351 F.3d 1134, 1137–38 (Fed. Cir. 2003). Because this court sitting en banc is equally divided on this issue, our decision today does not alter our precedent that § 5110(b)(1) is not a statute of limitations to which *Irwin*'s presumption of equitable tolling applies. Accordingly, the Veterans Court's decision, which relies on *Andrews* to deny Mr. Arellano an earlier effective date under § 5110(b)(1), is affirmed.

Judge Dyk and five of our colleagues, however, would overturn *Andrews* and conclude that § 5110(b)(1) is a

statute of limitations entitled to *Irwin*'s presumption. But their basis for affirming the Veterans Court's decision rests on deciding, in the first instance, that the facts of Mr. Arellano's case do not warrant equitable tolling. We disagree with this approach both in substance and process. Even if *Irwin*'s presumption were to somehow apply here, it would be rebutted by the statutory text of § 5110, which evinces clear intent from Congress to foreclose equitable tolling of § 5110(b)(1)'s one-year period. Moreover, it is not our role as an appellate court to decide whether Mr. Arellano's factual circumstances warrant equitable tolling where no prior tribunal has considered the issue and no party has argued for such an outcome.

## BACKGROUND

### A

Congress has provided by statute for the payment of monetary benefits to veterans with disabilities arising from service. 38 U.S.C. § 1110. To obtain disability compensation, veterans must first file a claim with the VA. 38 U.S.C. § 5101(a)(1). With certain limited exceptions not relevant here, no compensation may be paid before such a claim is filed. *Id*. (with exceptions not applicable here, a "claim . . . must be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary"). The size of a veteran's disability compensation award is determined, in part, by the effective date assigned to his award—i.e., the date on which benefits begin to accrue. An earlier effective date means a greater accrual of benefits.

Section 5110 of Title 38 governs the effective date of VA benefits awards. Two of its provisions are at issue in this appeal. First, § 5110(a)(1) sets forth the default rule that the effective date of an award cannot be earlier than the date the VA receives the veteran's application submitting a claim for that award:

> Unless specifically provided otherwise in this chapter, the effective date of an award based on an initial claim, or a supplemental claim, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

§ 5110(a)(1).[1]  Accordingly, the natural consequence of § 5110(a)(1)'s default rule is that no disability compensation is payable for periods predating the VA's receipt of the application for benefits, "[u]nless specifically provided otherwise" by statute.

Section 5110 sets forth several exceptions to § 5110(a)(1)'s default rule, each providing for a retroactive effective date—that is, an effective date earlier than the date VA received the application—which, in turn, leads to a greater benefits award than under the default rule. *See* § 5110(b)–(n).  Many of § 5110's exceptions pertain to specific circumstances that may delay the filing of an application for benefits.  These include:  discharge from the military, § 5110(b)(1); increase in the severity of a disability, § 5110(b)(3); the "permanent[] and total[] disab[ility]" of a veteran, § 5110(b)(4); death of a spouse, § 5110(d); and correction of military records, § 5110(i).  Each of § 5110's enumerated exceptions, however, expressly limits the retroactivity of the effective date to one year.  *See, e.g.*,

---

[1]    No party has identified a material difference, for present purposes, between "claim" and "application," and the VA's regulations appear to use these terms interchangeably.  *See, e.g.*, 38 C.F.R. § 3.1(p) (defining "claim" as "a written or electronic communication requesting a determination of entitlement or evidencing a belief in entitlement, to a specific benefit under the laws administered by the [VA] submitted on an application form prescribed by the Secretary").

§ 5110(g) ("In no event shall [an] award or increase [under this paragraph] be retroactive for more than one year from the date of application therefor . . . .").

As relevant here, one of those enumerated exceptions—§ 5110(b)(1)—provides that a disability compensation award's effective date may date back to the day after a veteran's discharge if the application for such benefits is received within one year after discharge:

> The effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release.

§ 5110(b)(1).

On the face of the statute, then, the effective date for awards based on applications received more than one year after discharge (that do not otherwise fall within any of § 5110's other enumerated exceptions) "shall not be earlier than the date of receipt of application therefor." § 5110(a)(1). This appeal considers whether equitable tolling may apply to § 5110(b)(1)'s one-year period to permit an effective date reaching back to the day after the veteran's discharge from service, even though the application for that award was received more than one year after discharge.

The equitable-tolling doctrine, as traditionally understood, "permits a court to pause a statutory time limit 'when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.'" *See Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2050 (2017) (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)) . Such "extraordinary circumstances" include "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has

been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," but exclude "a garden variety claim of excusable neglect." *Irwin*, 498 U.S. at .96 (footnote omitted). But before deciding whether the factual circumstances are extraordinary enough to justify equitable tolling, a court must first determine whether the statutory time limit at issue is one amenable to equitable tolling.

This court has previously addressed whether § 5110(b)(1)'s one-year period is subject to equitable tolling in *Andrews*. There, the claimant-appellant, Ms. Andrews, submitted a claim for disability compensation approximately fourteen months after her discharge from service. 351 F.3d at 1135. As a result, she was awarded compensation effective as of the date the VA received her claim. Ms. Andrews appealed that decision, arguing that § 5110(b)(1)'s one-year period should be equitably tolled for at least two months (on a failure-to-notify theory) to qualify her for an earlier effective date dating back to the day after discharge. We disagreed, holding that the "principles of equitable tolling . . . are not applicable to the time period in § 5110(b)(1)." *Id.* at 1137. This follows, we explained, because § 5110(b)(1) "does not contain a statute of limitations, but merely indicates when benefits may begin and provides for an earlier date under certain limited circumstances." *Id.* at 1138. Unlike how a statute of limitations operates, this statutory provision "addresses the question of when benefits begin to accrue, not whether a veteran is entitled to benefits at all," and "[p]assage of the one-year period in § 5110(b)(1) . . . does not foreclose payment for the veteran." *Id.* On that basis, we affirmed the denial of an earlier effective date for Ms. Andrews's claim.

B

We now turn to the facts of Mr. Arellano's appeal. Mr. Arellano served honorably in the Navy from November 1977 to October 1981. Nearly 30 years later, on June 3, 2011, the VA regional office (RO) received Mr. Arellano's

claim for service-connected disability benefits for his psychiatric disorders.  The RO granted service connection with a 100 percent disability rating for "schizoaffective disorder bipolar type with PTSD [post-traumatic stress disorder]." J.A. 506.  The granted effective date of Mr. Arellano's award was the date his claim was received—i.e., June 3, 2011.

Mr. Arellano appealed his effective-date determination to the Board of Veterans' Appeals (Board), arguing that his mental illness had prevented him from filing his claim earlier.  Mr. Arellano submitted, as support, a medical opinion by his psychiatrist indicating that he had been "100% disabled since 1980," when he was "almost crushed and swept overboard while working on the flight deck of [an] aircraft carrier."  J.A. 529.  Given his disability, Mr. Arellano argued that § 5110(b)(1)'s one-year period should be equitably tolled to qualify him for an effective date retroactive to the day after his discharge from the Navy.  The Board rejected his equitable-tolling argument, and the Veterans Court affirmed that decision, concluding that Mr. Arellano's claim was "squarely foreclosed by binding precedent" in *Andrews*.  *See Arellano v. Wilkie*, No. 18-3908, 2019 WL 3294899, at *2 (Vet. App. July 23, 2019).

Mr. Arellano then timely appealed to this court, and the case was heard before a panel on July 6, 2020.  On August 5, 2020, we took the case *en banc* and entered a *sua sponte* order directing the parties to brief the following issues:

> A.  Does the rebuttable presumption of the availability of equitable tolling articulated in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), apply to 38 U.S.C. § 5110(b)(1), and if so, is it necessary for the court to overrule *Andrews v. Principi*, 351 F.3d 1134 (Fed. Cir. 2003)?

B.   Assuming *Irwin*'s rebuttable presumption applies to § 5110(b)(1), has that presumption been rebutted?

C.   Assuming this court holds that *Irwin*'s rebuttable presumption applies to § 5110(b)(1), would such a holding extend to any additional provisions of § 5110, including but not limited to § 5110(a)(1)?

D.   To what extent have courts ruled on the availability of equitable tolling under statutes in other benefits programs that include timing provisions similar to § 5110?

Order Granting En Banc Review, No. 20-1073 (Aug. 5, 2020), ECF No. 45, at 2–3.

DISCUSSION

A

Our jurisdiction to review decisions of the Veterans Court is limited by statute.  *See* 38 U.S.C. § 7292. "The Court of Appeals for the Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." § 7292(d)(1).  Because our review of this decision involves a question of statutory interpretation—namely, the availability of equitable tolling for a particular statutory provision—we have jurisdiction over this matter.  We review questions of law, such as this one, de novo.  *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991).

*Irwin* sets forth the analytical framework that guides our decision. At issue there was whether a statute of limitations in a suit against the government was subject to equitable tolling.  Specifically, the *Irwin* petitioner sought equitable tolling of 42 U.S.C. § 2000e-16(c)'s 30-day deadline for filing a Title VII civil action against the federal government in district court after receiving a right-to-sue notice    from    the    Equal    Employment    Opportunity

Commission (EEOC).  While statutes of limitations in suits between private litigants are "customarily" subject to equitable tolling, an analogous presumption had not yet been established for suits against the government.  *See Irwin*, 498 U.S. at 95.  *Irwin* held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States."  *Id.* at 95–96.  This case thus established a rule of general applicability for equitable tolling of statutes of limitations in suits against the government, with the caveat that "Congress, of course, may provide otherwise if it wishes to do so."  *Id.* at 96.

From this, we have understood the *Irwin* framework to consist of two steps.  First, we must determine whether the rebuttable presumption of equitable tolling applies to the statutory provision at issue.  And, if so, we must then determine whether that presumption has been rebutted—or in other words, whether there is "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply" to the statute.  *See United States v. Brockamp*, 519 U.S. 347, 349–50 (1997).  We address each step of the analysis in turn.

B

Before determining whether *Irwin*'s presumption of equitable tolling applies to § 5110(b)(1), we first elucidate our understanding of the presumption's origins and limits.

"Congress is understood to legislate against a background of common-law adjudicatory principles."  *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).  One such background principle is that "federal statutes of limitations are generally subject to equitable principles of tolling," *see Rotella v. Wood*, 528 U.S. 549, 560–61 (2000), which is "a long-established feature of American jurisprudence derived from 'the old chancery rule,'" *Lozano*, 572 U.S. at 10–11 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)).  Justification for this

principle comes from recognizing that tolling can be consistent with the purpose of a statute of limitations under certain circumstances.  In other words, because a statute of limitations is designed "to encourage the plaintiff to pursue his rights diligently" after a cause of action has accrued, when an "extraordinary circumstance prevents him from bringing a timely action" despite his diligence, "the restriction imposed by the statute of limitations [no longer] further[s] the statute's purpose" and can be equitably tolled.  *CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014) (cleaned up).

Given that "Congress must be presumed to draft limitations periods in light of this background principle," *Young v. United States*, 535 U.S. 43, 49–50 (2002), courts have customarily "presume[d] that equitable tolling applies if the period in question is a statute of limitations and if tolling is consistent with the statute," *Lozano*, 572 U.S. at 11.  And while this practice began in lawsuits between private litigants, *Irwin* subsequently extended the presumption to suits against the government.  498 U.S. at 95–96 ("[T]he *same* rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." (emphasis added)); *see also id.* at 96 ("[I]t is evident that no more favorable tolling doctrine may be employed against the [g]overnment than is employed in suits between private litigants.").

Because the presumption serves as a proxy for the background legal principles that Congress is understood to legislate against, it follows that *Irwin*'s presumption is limited to only those statutory provisions that are established in common law as subject to equitable tolling—namely, statutes of limitations.  *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 137 (2008) ("[*Irwin*'s] presumption seeks to produce a set of statutory interpretations that will more accurately reflect Congress' likely meaning in the mine run of instances where it enacted a

[g]overnment-related statute of limitations."). To that end, the Supreme Court has so far applied the presumption of equitable tolling *only* to statutory provisions that Congress clearly would have viewed as statutes of limitations. *See, e.g., Lozano*, 572 U.S. at 13–14 ("[W]e have only applied [the] presumption [in favor of equitable tolling] to statutes of limitations."); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–95 (1982) (holding that a limited filing period for EEOC charges is like a statute of limitations that is subject to waiver, estoppel, and equitable tolling). This comports with the understanding that equitable tolling "applies when there is a statute of limitations; it is, in effect, *a rule of interpretation tied to that limit.*" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 681 (2014) (emphasis added); *see also Equitable Tolling*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "equitable tolling" as "[t]he doctrine that the *statute of limitations* will not bar a claim if . . ." (emphasis added)); *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) ("[E]quitable [tolling] is read into every federal statute of limitation."). Conversely, the Supreme Court has declined to presume that equitable tolling applies where the time limit at issue functions "*[u]nlike* a statute of limitations," *see Hallstrom v. Tillamook County*, 493 U.S. 20, 27 (1989) (emphasis added), or lacks "a background principle of equitable tolling," *see Lozano*, 572 U.S. at 12. *See also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 158–59 (2013) (declining to presume that "an agency's internal appeal deadline" is subject to equitable tolling because the Supreme Court had "never applied the *Irwin* presumption to [such a provision]"). As these cases reflect, determining that Congress would have viewed a provision as a statute of limitations is a necessary first step in inferring congressional intent to permit equitable tolling of that provision. Accordingly, absent some other established background principle of law permitting equitable tolling for the statutory provision at issue, *Irwin*'s presumption applies only to those statutory provisions that Congress clearly would have viewed as statutes of limitations.

12                                 ARELLANO v. MCDONOUGH

Our conclusion is supported not only by *Irwin*'s logic and the subsequent cases applying it, but also, by the limitations of the Appropriations Clause of the Constitution, art. I, § 9, cl. 7, on the payment of money from the public fisc contrary to the express terms of a statute. *See Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990). The Appropriations Clause provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." As the Supreme Court explained in *Richmond*: "For the particular type of claim at issue here, a claim for money from the Federal Treasury, the Clause provides an explicit rule of decision. Money may be paid out only through an appropriation made by law; in other words, the payment of money from the Treasury must be authorized by a statute." 496 U.S. at 424.[2] Thus, where a plaintiff seeks to enlarge the monetary benefits awarded by the express terms of a statute through equitable tolling (as Mr. Arellano does here), we must decide whether Congress intended to authorize payment of those additional benefits via equitable tolling. This, in turn, necessarily implicates the question of whether Congress would have viewed the benefits provision at issue as a statute of limitations carrying the usual feature of equitable tolling.

Our analysis therefore begins by asking whether § 5110(b)(1)'s effective date provision is such a provision. As discussed below, and consistent with our reasoning in *Andrews*, § 5110(b)(1) is not a statute of limitations.

---

[2] That is not to say, however, that the Appropriations Clause bars all equitable tolling against the government for monetary claims. Instead, if "application of the doctrine [of equitable tolling] is consistent with Congress' intent in enacting a particular statutory scheme, [then] there is no justification for limiting the doctrine to cases that do not involve monetary relief." *See Bowen v. City of New York*, 476 U.S. 467, 479 (1986).

C

To determine whether § 5110(b)(1) is a statute of limitations, we consider whether this provision satisfies the "functional characteristics" of such statutes. *Lozano*, 572 U.S. at 15 n.6 ("[T]he determination [of] whether [a statutory provision] is a statute of limitations depends on its functional characteristics . . . ."). As explained below, § 5110(b)(1) does not have the functional characteristics of a statute of limitations. We see two reasons why Congress would not have thought that the provision belongs to that category of laws.

First, § 5110(b)(1) does not operate to bar a veteran's claim for benefits for a particular service-connected disability after one year has passed. Instead, like the general rule of § 5110(a)(1), it determines one of many elements of a benefits claim that affects the amount of a veteran's award but, unlike a statute of limitations, does not eliminate a veteran's ability to collect benefits for that very disability. Second, and relatedly, § 5110(b)(1) lacks features standard to the laws recognized as statutes of limitations with presumptive equitable tolling: its one-year period is not triggered by harm from the breach of a legal duty owed by the opposing party, and it does not start the clock on seeking a remedy for that breach from a separate remedial entity. *See* 1 Calvin W. Corman, LIMITATION OF ACTIONS, § 6.1, at 370 (1991). The statutory scheme governing veterans' benefits makes clear that the VA is not obligated to pay any benefits before a claim applying for such benefits is filed, so there is no duty, or breach of duty, at the onset of § 5110(b)(1)'s one-year period (i.e., the day after discharge). Moreover, no remedial authority separate from the VA is involved in an initial application for veterans'

benefits.[3] The effective-date provision in this case, then, is of a sufficiently different character from that of statutes of

---

[3] Judge Dyk contends that the need for a separate remedial authority is inconsistent with three cases purportedly establishing that "a statute governing the timeliness of a claim to an agency for payment from that agency is a statute of limitations." Dyk Op. 7 (citing *United States v. Williams*, 514 U.S. 527, 534 & n.7 (1995); *Colvin v. Sullivan*, 939 F.2d 153, 156 (4th Cir. 1991); and *Warren v. Off. of Pers. Mgmt.*, 407 F.3d 1309, 1316 (Fed. Cir. 2005)). None of these cases, however, addresses equitable tolling of such statutes, let alone holds that they are entitled to *Irwin*'s presumption. Instead, these cases merely use the phrase "statute of limitations" briefly in dicta as a colloquial expression for a statutory time limit. But as *Williams* readily demonstrates, the fleeting and casual use of this phrase in no way establishes that *Irwin*'s presumption applies to those time limits or that they can be equitably tolled.

*Williams* concerns the same statutory provision (26 U.S.C. § 6511) revisited two years later in *Brockamp*. While equitable tolling was not at issue in *Williams*, *Brockamp* raised the question of whether § 6511 may be equitably tolled under *Irwin*. Rather than concluding that *Irwin*'s presumption applies, the Supreme Court carefully "assume[d] . . . only for argument's sake" that § 6511's time limit was an *Irwin*-covered statute of limitations. *See Brockamp*, 519 U.S. at 349–50; *see also Auburn*, 568 U.S. at 159. And even under that assumption, the Court nonetheless concluded that Congress did not intend for equitable tolling to apply to § 6511's time limit. *Brockamp*, 519 U.S. at 350–54.

These cases, moreover, do not involve statutory provision functionally similar to § 5110(b)(1), or otherwise establish a background principle of law that would authorize a tribunal to override § 5110(b)(1)'s express statutory

limitations entitled to *Irwin*'s presumption. These marked differences undermine any inference that Congress would have viewed § 5110(b)(1) as falling within that category of laws, so as to justify judicial override of Congress' express statutory limits on benefits payments. Below, we address these differences in function and characteristics in detail.

1

A statute of limitations, simply put, is a "law that bars claims after a specified period." *Statute of Limitations*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Statutes of limitations are designed to encourage plaintiffs to pursue diligent prosecution of known claims," *Cal. Pub. Emps. Ret. Sys.*, 137 S. Ct. at 2049 (internal quotation marks omitted), by "prescrib[ing] a period within which certain rights . . . may be enforced," *Young*, 535 U.S. at 47. By barring stale claims, statutes of limitations "assure fairness to defendants" and "promote justice by preventing surprises through the revival of claims that have been allowed to slumber." *See Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) (internal quotation marks omitted).

To determine whether the functional characteristics of a statute of limitations are met, the Supreme Court has focused the inquiry on whether the statute at issue encourages plaintiffs to promptly pursue their claims or risk losing remedies for those claims. In *Young*, for instance, the Court held that a statutory "three-year lookback period" for the IRS to collect overdue, unpaid taxes from a

---

limits on monetary governmental benefits. And unlike an initial application for veterans' benefits, these cases implicate a preexisting duty to pay owed by the government. *Williams*, *Colvin*, and *Warren* therefore fail to establish that a tribunal may override, through equitable tolling, an indisputably applicable statutory limit on governmental monetary benefits.

taxpayer in bankruptcy proceedings was a statute of limitations because it "encourages the IRS to protect its rights" by "collecting the debt or perfecting a tax lien—before three years have elapsed." 535 U.S. at 47 (citations omitted). There, the relevant statute afforded the IRS certain "legal remedies" for collecting a tax debt accrued within three years before a debtor's bankruptcy petition filing: the tax debt is nondischargeable and the IRS's claim enjoys eighth priority[4] in bankruptcy. *Id.* at 47–48. But if the IRS "sleeps on its rights" by failing to act within the three-year lookback period, then the IRS loses those "legal remedies" for collecting that debt. Specifically, "its claim loses priority and the debt becomes dischargeable" in bankruptcy, so that a bankruptcy decree will release the debtor from any obligation to pay and leave the IRS unable to collect on that debt. *Id.* The Court concluded that such a provision— which bars the IRS from recovering any tax debt accrued more than three years before bankruptcy proceedings begin—is a statute of limitations because it serves the "same basic policies [furthered by] all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Id.* The Supreme Court also employed similar reasoning in *Zipes*, determining that the period for filing a charge of employment discrimination with the EEOC (a precondition to a federal-court action) operates as a statute of limitations given "its purpose [of] preventing the pressing of stale claims" and "giv[ing] prompt notice to the [defendant] employer"—the very

---

[4]    The bankruptcy priority scheme determines the order in which claims are paid. Claims with higher priority are entitled to payment in full before anything can be distributed to claims of lower rank. *See* 1 Richard I. Aaron, *Bankruptcy Law Fundamentals* § 8:10 (2020 ed.).

"end[s] served by a statute of limitations." 455 U.S. at 394, 398 (internal quotation marks omitted).

By contrast, *Lozano* considered a time limitation that did not function as a statute of limitations and was therefore not subject to equitable-tolling principles. There, the Supreme Court declined to apply the presumption of equitable tolling to a treaty provision that did not did not "establish[] any certainty about the respective rights of the parties" and, instead, addressed policy concerns irrelevant to the functioning of a statute of limitations. 572 U.S. at 14–15. At issue was a Hague Convention provision requiring the return of a child abducted by a parent in a foreign country, so long as the left-behind parent requests return "within one year." 572 U.S. at 4. After one year, the child must still be returned to the left-behind parent "*unless* it is demonstrated that the child is now settled." *Id.* at 15 (emphasis added). Expiration of the one-year period thus "does not eliminate the remedy [for] the left-behind parent— namely, the return of the child" and, instead, merely "opens the door" to consider "the child's interest" as well as the parent's interest. *Id.* at 14–15. Such a provision "is not a statute of limitations," the Court explained, because the "continued availability of the return remedy after one year preserves the possibility of relief for the left-behind parent and prevents repose for the abducting parent." *Id.* Moreover, the additional consideration of the child's interest is "not the sort of interest addressed by a statute of limitations." *Id.*; *see also In re Neff*, 824 F.3d 1181, 1186–87 (9th Cir. 2016) (holding that a statutory provision is not a statute of limitations because it does not serve the purposes of "repose, elimination of stale claims, and certainty" and, instead, addressed unrelated policy concerns).[5]  The Court

---

[5]    In *Neff*, the statutory provision at issue foreclosed discharge in bankruptcy for debtors who improperly

thus concluded that equitable tolling was unavailable for the treaty provision at issue.

Similarly, in *Hallstrom v. Tillamook County*, the Court determined that a provision requiring plaintiffs to give notice of alleged environmental violations to the relevant agency 60 days prior to commencing a civil action was not a statute of limitations subject to equitable modification. 493 U.S. at 27.  The Court explained:  "*Unlike* a statute of limitations, [the] 60-day notice provision is not triggered by the violation giving rise to the action."  *Id.* (emphasis added).  Instead, plaintiffs "have full control over the timing of their suit," as "they need only give notice to the appropriate [agency] and refrain from commencing their action for at least 60 days.  *Id.*  The 60-day notice period, therefore, did not encourage plaintiffs to diligently file claims or risk losing remedies for a violation.

Here, as in *Lozano* and *Hallstrom*, § 5110(b)(1)'s effective-date provision does not have the key "functional characteristics" that define a statute of limitations.  Because a veteran seeking disability compensation "faces no time limit for filing a claim," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 431 (2011), "[t]here is no statute of limitations" for filing such a claim, *Walters v. Nat'l Ass'n of*

---

transferred property "within one year" of filing a bankruptcy petition.  824 F.3d at 1183.  The Ninth Circuit concluded that such a provision is not a statute of limitations because it "is not designed to encourage a specific creditor to prosecute its claim promptly to avoid losing rights" and, in fact, "does not encourage (or require) a creditor to take any action at all."  *Id.* at 1186.  Moreover, the purpose of the statute—to deter and penalize dishonest debtors from "seeking to abuse the bankruptcy system"—concerned policy matters unrelated to "the sort of interest addressed by a statute of limitations."  *Id.* at 1187 (citing *Lozano*, 572 U.S. at 15).

*Radiation Survivors*, 473 U.S. 305, 311 (1985).  The timing of *when* the claim is filed affects only an element of the claim itself—the effective date—and not whether the veteran is entitled to benefits at all.  *See Collaro v. West*, 136 F.3d 1304, 1308 (Fed. Cir. 1998) (explaining that "the effective date of the disability" is one of five elements to a veteran's application for benefits).  A veteran is entitled to press the same claim for a specific service-connected disability regardless of whether the claim is filed within a year after discharge or 30 years after discharge, as was the case for Mr. Arellano.  Section 5110(b)(1), like the treaty provision in *Lozano*, thus does not set forth any period after which a veteran is foreclosed from pressing that claim and receiving benefits if the claim is established.

The timing provision of § 5110(b)(1), in fact, does not function to bar stale claims or encourage the diligent prosecution of known claims.  To the contrary, § 5110(b)(1) was adopted to "remove[] injustices where there is delay in filing [a] claim due to no fault of the veteran and payment could otherwise be made only from [the filing] date of [the] claim."  *See* 89 Cong. Rec. A4026 (1943) (statement of Rep. Rankin).  Section 5110(b)(1)'s one-year grace period thus forgives a veteran's temporary *delay* in filing a claim in the immediate aftermath of a veteran's transition back to civilian life upon discharge from military service.  This provision is itself an equitable exception provided by Congress to address injustices that may arise from § 5110(a)(1)'s default rule and, in that respect, speaks to policy concerns that are "not the sort of interest addressed by a statute of limitations."  *See Lozano*, 572 U.S. at 15.  Given (1) the well-established understanding of what constitutes a statute of limitations, and (2) the nature of § 5110(b)(1)'s effective-date provision, § 5110(b)(1) does not satisfy the "functional characteristics" of a statute of limitations.

Mr. Arellano, in response, asserts that even if § 5110 preserves the possibility of prospective benefits for an ongoing disability regardless of when the claim is filed, a

veteran will nonetheless lose out on retroactive benefits dating back to the day after discharge if his claim is not filed within one year of discharge. Section 5110(b)(1)'s one-year period therefore encourages veterans to diligently file their disability claims after discharge to protect their rights to retroactive benefits. He argues that § 5110(b)(1) is "similar" to the statutory-lookback periods for copyright and patent damages in *Petrella* and *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 137 S. Ct. 954 (2017), respectively, insofar as these statutes all "limit [the amount of] claimants' damages but not their ability to seek redress for an ongoing . . . injury." Appellant's Supp. Reply Br. 10. We disagree.

This argument overlooks the distinction that § 5110(b)(1) establishes the effective date of a *single* benefits claim for an ongoing disability, whereas an ongoing course of infringement in *Petrella* and *SCA Hygiene* comprises a "series of discrete infringing acts," *each* of which is a distinct harm giving rise to an independent claim for relief that starts a new limitations period. *See Petrella*, 572 U.S. at 671–72. The copyright damages statute states: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). As *Petrella* explains, this statute is subject to the "separate accrual rule"—that is, "when a defendant commits successive violations, the statute of limitations runs separately from each violation," such that each violation "gives rise to a *discrete 'claim'* that 'accrue[s]' at the time the wrong occurs." 572 U.S. at 671 (alteration in original) (emphasis added). "In short, *each* infringing act starts a new limitations period." *Id.* (emphasis added). Subsequently, in *SCA Hygiene*, the Supreme Court confirmed that the "same reasoning" from *Petrella* applies to the six-year lookback period in the patent damages statute, 35 U.S.C. § 286. As with copyright infringement, each individual act of patent infringement gives rise to a discrete claim that starts its own six-year limitations

period for seeking a remedy for that act.  *See* 1 Robert A. Matthews, Jr., Annotated Patent Digest § 9:2 (2021 ed.) (explaining that in a series of discrete infringing acts, "each act . . . can constitute its own separate act of [patent] infringement").  The lookback periods for copyright and patent damages, therefore, function just as a traditional statute of limitations would to foreclose pressing of stale claims, while permitting timely claims to proceed.

By contrast, § 5110(b)(1)'s one-year grace period never bars a veteran's benefits claim regardless of when it was filed and, instead, establishes an element of the claim itself (i.e., the effective date of the award).  *Cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (distinguishing an "essential element of a claim for relief" from a jurisdictional statutory limitation).    Mr. Arellano, moreover, has not demonstrated that a single claim seeking benefits for a specific disability can comprise two discrete claims for retrospective and prospective benefits, each arising from a distinct injury that starts its own limitations period.  Nor is there a basis for construing his claim in this manner, given that retrospective and prospective benefits arise from the same "five common elements" of a single benefits claim: "[1] status as a veteran, [2] existence of disability, [3] a connection between the veteran's service and the disability, [4] the degree of disability, and [5] the effective date of the disability."  *See Collaro*, 136 F.3d at 1308.  Thus, neither § 507(b)'s copyright limitations period nor § 286's patent limitations period support finding that § 5110(b)(1) functions as a statute of limitations amenable to equitable tolling.

Mr. Arellano next analogizes to *Young*'s three-year lookback period, arguing that § 5110(b)(1)—which bars only *retroactive* benefits predating the date the VA received his claim, but not *prospective* benefits beginning from the date the VA received his claim—is no less a statute of limitations than the lookback period in *Young*.  We disagree.  *Young*'s lookback period is a "limited statute of limitations"

in the sense that it arises only in the situation when a tax debtor files a bankruptcy petition and bars certain "legal remedies" (i.e., priority and nondischargeability in bankruptcy) outside of the lookback period. *See* 535 U.S. at 47–48. But the Supreme Court concluded it was "a statute of limitations nonetheless" because any tax debt accrued more than three years before the date of the bankruptcy petition becomes fully dischargeable, leading to the "elimination of stale claims." *Id.* Expiration of the three-year lookback period therefore barred the entirety of the IRS's claim, just as a traditional statute of limitations would. *See id.* at 47 (explaining that the lookback period functions as a statute of limitations by barring "[o]ld tax claims" falling outside the statutory period). Here, under § 5110(b)(1), disability compensation claims received within one year of discharge are afforded an earlier effective date that results in, at most, one year of retroactive benefits. But unlike *Young*'s lookback period, passage of this one-year period does not bar a veteran from attaining any effective date at all and, instead, bars only an effective date earlier than the date of receipt. The practical effect of § 5110(b)(1), then, is not to foreclose a veteran from all benefits but only from those retroactive from the day his claim is received.

Mr. Arellano, however, offers the following variation on *Young*: instead of having only one tax year at issue, suppose that the Youngs owed tax debt from multiple years. The IRS would then be barred from recovering tax debt from the years outside the three-year lookback period but could still recover any of the debt from within that period. *See* Oral Arg. at 30:32–32:52. Under this hypothetical, Mr. Arellano contends, the lookback period merely affects the *amount* of relief the IRS would be entitled to recover but does not entirely bar the IRS from such relief, meaning that it is a "more limited statute of limitations, but a statute of limitations nonetheless." *See Young*, 535 U.S. at 48. So too here, Mr. Arellano asserts, where filing a benefits claim after § 5110(b)(1)'s one-year grace period merely

affects the amount of benefits awarded without barring the claim itself.

But this hypothetical is no different from the lookback periods in *Petrella* and *SCA Hygiene* and is distinguishable for the same reason: § 5110(b)(1) establishes the effective date of a *single* application for disability benefits, whereas each year of tax debt in Mr. Arellano's hypothetical corresponds to a *separate* IRS claim involving different facts and liabilities. *See, e.g.*, *Young*, 535 U.S. at 46 (three-year lookback period applies to "claims" for unpaid taxes "for a *taxable year*" (emphasis added)). In other words, "[i]f the IRS has a claim for taxes for which the return was due within three years before the bankruptcy petition was filed," then the IRS's claim is protected and "nondischargeable in bankruptcy." *Id.* But if the claim is for unpaid taxes from a return due more than three years before the bankruptcy petition was filed, then that individual claim is lost and dischargeable in bankruptcy. Because the tax debt arising from each tax year constitutes its own distinct claim against a taxpayer, *Young*'s lookback period operates as any other statute of limitations would to bar stale claims arising from older tax years while providing remedies for timely claims. *See id.* at 49 (the lookback period "define[s] *a subset of claims* eligible for certain remedies" when a tax debtor is in bankruptcy (emphasis added)). Accordingly, for the reasons discussed above, *Young*'s lookback period fails to demonstrate that § 5110(b)(1) functions as a statute of limitations.

2

Section 5110(b)(1) also differs from statutes of limitations in additional ways—namely, with respect to the onset of its one-year period and the remedial authority involved. These differences further undermine any inference that Congress must have viewed § 5110(b)(1) as a statute of limitations that would presumptively allow judicial override of express statutory limits on benefits payments under *Irwin*.

The "standard rule" is that a statute of limitations begins to run when the cause of action "accrues," i.e., when "the plaintiff has a 'complete and present cause of action.'" *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007). Unless Congress indicates otherwise, "a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." *Bay Area Laundry*, 522 U.S. at 201. The earliest opportunity for a plaintiff to sue under such circumstances is when the opposing party has violated some duty owed to that plaintiff, such as contractual obligations or a duty of care. *See* 1 Calvin W. Corman, LIMITATION OF ACTIONS, § 6.1, at 370 (1991) ("The earliest opportunity for a complete and present cause of action is that moment when the plaintiff has suffered a *legally recognizable harm* at the hands of the defendant, such as the time of contract breach or the commission of a tortious wrong." (emphasis added)). In *Bay Area Laundry*, for instance, the Supreme Court held that a cause of action against an employer that withdraws from a multiemployer pension plan is not complete, and therefore the statute of limitations does not run, until a demand for payment is made by the plan's trustees and rejected by that employer. 522 U.S. at 202. This follows, the Court explained, because "the statute makes clear that the withdrawing employer owes nothing *until* its plan demands payment," and absent such a demand, the employer has no duty of payment that could be violated to give rise to a cause of action. *See id.* (emphasis added).

As applied to the veterans' benefits context, the earliest point at which a veteran could have a "complete and present cause of action" is when the VA has failed to satisfy a legal duty owed to the veteran, such as when his claim for benefits has been wrongfully adjudicated or denied. In this vein, we have recognized that the 120-day time limit for a

veteran to appeal an unsatisfactory Board decision to the Veterans Court is a statute of limitations to which *Irwin*'s presumption applies. *See Jaquay v. Principi*, 304 F.3d 1276, 1283 (Fed. Cir. 2002) (en banc) (citing *Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998) (en banc)). But the one-year period in § 5110(b)(1), beginning on the day after discharge from service, does not measure the time from harm caused by a breach of duty, or even from a breach of duty, to the filing of the claim. This, together with the fact that the claim is not made to a separate entity with authority to address an asserted breach, makes it unlikely that Congress conceived of this timing rule as a statute of limitations for *Irwin* purposes.

Indeed, in an initial application for disability compensation where § 5110 governs the effective-date determination, the VA has not yet violated any legal duty owed to the claimant that would trigger a statute of limitations to run. The statutory scheme governing veterans' benefits makes clear that the VA is not obligated to pay any benefits before a claim applying for such benefits is filed. In particular, § 5101(a)(1)(A) states that "a specific claim in the form prescribed by the Secretary . . . *must* be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary." § 5101(a)(1)(A) (emphasis added). This provision explains that the filing of a benefits claim must first occur for any benefits to accrue or be paid by the VA. The VA thus has no preexisting duty to award benefits, and a veteran has no corresponding right to receive such benefits, until after a claim applying for benefits is filed by the veteran with the VA. *See Jones v. West*, 136 F.3d 1296, 1299 (Fed. Cir. 1998) ("Section 5101(a) is a clause of general applicability and mandates that a claim must be filed in order for any type of benefit to accrue or be paid."), *cert. denied*, 525 U.S. 834 (1998); *McCay v. Brown*, 106 F.3d 1577, 1580 (Fed. Cir. 1997) (stating § 5101(a) requires that "a claim must be on file before benefits may be obtained"). Without a preexisting right,

there can be no violation of that right for which a veteran would seek redress, which could then be barred if not pursued within a specified limitations period. *See* Henry M. Hart, Jr. & Albert M. Sacks, THE LEGAL PROCESS 136–37 (William N. Eskridge, Jr. & Philip P. Frickey eds., 1994); *id.* at 137 (stating that it is wrong to "allow a primary right to be confused with a remedial right of action, which is a very different legal animal" and criticizing "confusion between a primary claim to a performance and a remedial capacity to invoke a sanction for nonperformance"). Section 5110(b)(1)'s effective-date provision, then, is of a different character than a statute of limitations because the filing of a benefits claim is not an action seeking a remedy for previously due, but wrongfully unpaid, benefits. *See Hallstrom*, 493 U.S. at 27 (holding that a statutory time limit is "[u]nlike a statute of limitations" because it is not "triggered by the violation giving rise to the action" and is therefore not subject to equitable modification and cure).

Logic also supports our conclusion that there is no cause of action, and therefore no statute of limitations that could be equitably tolled, until after a claimant files an initial claim for benefits and receives an unsatisfactory VA decision on that claim. A claimant seeking an increased benefits award, as Mr. Arellano does here, has no basis to maintain a suit against the VA until at least two events have transpired. He must first file an initial claim seeking benefits from the VA. And second, he must receive the VA's initial decision determining the amount of his award. Only then could that claimant have a cause of action against the VA if he disagrees with the amount of benefits awarded. *Cf. Bay Area Laundry*, 522 U.S. at 202 ("Absent a demand, even a willing employer cannot satisfy its payment obligation, for the withdrawing employer cannot determine, or pay, the amount of its debt until the plan has calculated that amount."). Yet if § 5110(b)(1) were a statute of limitations as Mr. Arellano and Judge Dyk contend, a claimant would have a cause of action on the day after his discharge

from service—before any claim for benefits has been filed and before the VA has made an initial determination on the claim with which the claimant could disagree. "Such a result is inconsistent with basic limitations principles," *id.* at 200, and we do not see how a statute of limitations could begin to run on the day after discharge.

Judge Dyk responds that this reasoning is inconsistent with "cases holding that a provision barring benefits for failure to file [a claim] within a prescribed period constitutes a statute of limitations, regardless of any alleged breach of duty by the government." Dyk Op. at 5. He cites our decision in *Cloer v. Sec'y of Health & Hum. Servs.*, where we held that the Vaccine Act's 36-month deadline for filing a petition for compensation for a "vaccine-related injury" is a statute of limitations that begins to run on the date the first symptom or manifestation of onset of the injury claimed occurs. 654 F.3d 1322, 1340–44 (Fed. Cir. 2011) (en banc). The Vaccine Act's 36-month filing deadline, however, is easily distinguishable from § 5110(b)(1)'s effective date provision.

Unlike § 5110(b)(1), the Vaccine Act's filing deadline is phrased and functions as a traditional statute of limitations that *bars* a plaintiff from seeking relief from a tribunal once the specified time limit has passed. Specifically, 42 U.S.C. § 300aa-16(a)(2) recites: "if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." Nothing in this provision purports to affect the amount of compensation awarded on a successful petition. In contrast to § 5110(b)(1)'s effective date provision, which does not bar a claimant from filing an application for benefits more than one year after discharge, § 300aa-16(a)(2) bars the filing of a petition for compensation after 36 months have passed since the "first symptom or

manifestation of onset or of the significant aggravation" of claimant's vaccine-related injury. Section 300aa-16(a)(2) thus exhibits the functional characteristics germane to all statutes of limitations by encouraging claimants to promptly file a petition or risk losing remedies available under the Vaccine Act.

Moreover, in contrast to an initial application seeking veterans' benefits from the VA, the Vaccine Act's filing deadline arises in a context in which a plaintiff seeks redress in federal court for a *preexisting* duty owed by the defendant. Prior to the Act, a plaintiff injured by a vaccine could directly sue the vaccine's manufacturer in civil court, alleging harm caused by that manufacturer's breach of duty. But due to concerns that civil actions against vaccine manufacturers were unsustainably raising vaccine prices and driving manufacturers out of the market, Congress enacted the Vaccine Act to create a streamlined process to "stabilize the vaccine market and expedite compensation to injured parties." *Sebelius v. Cloer*, 569 U.S. 369, 372 (2013) (citing H.R. Rep. No. 99-908, at 4 (1986)). Payments awarded under the Act are funded by the vaccine manufacturers themselves through an excise tax levied on each dose of vaccine. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 239–40 (2011); H.R. Rep. No. 99-908, at 34 (excise tax on vaccine manufacturers are intended to "generate sufficient annual income for the Fund to cover all costs of compensation"). However, the government (specifically, the Secretary of Health and Human Services) administers the program and, in doing so, assumes the preexisting legal duty owed to a claimant who has suffered a vaccine-related injury. *See* 42 U.S.C. § 300aa-12(b)(1) ("In all proceedings brought by the filing of a petition under [§] 300aa-11(b) of this title, the Secretary shall be named as the respondent, shall participate, and shall be represented.").

While the Vaccine Act eases certain evidentiary burdens by not requiring claimants to prove "wrongdoing by the manufacturer" or causation for on-Table injuries, *see*

H.R. Rep. 99-908, at 12 (1986), initiating a Vaccine Act proceeding bears substantial similarities to initiating a civil action governed by a statute of limitations. Both require an injured party to seek—within a statutory time period—a remedy before a federal court predicated on a legal duty owed by another. Just as a plaintiff initiates a civil action by serving the defendant and timely filing a complaint in court, "[a] proceeding for compensation under [the Vaccine Act] shall be initiated by service upon the Secretary and the filing of a petition . . . with the United States Court of Federal Claims" within 36 months of the first symptom or manifestation of vaccine-related injury. *See* 42 U.S.C. § 300aa–11(a)(1). Nothing in this initiation process speaks to the administrative context in which § 5110(b)(1) operates, wherein a claimant files an initial application with the VA seeking an award of monetary benefits from that agency, such that the application's date of receipt determines (in part) the total amount of benefits awarded.

Our understanding of the functional distinction between § 5110(b)(1)'s effective-date provision and a statute of limitations is further confirmed by observing that "the *creation of a right* is distinct from the provision of *remedies for violations* of that right." *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (emphasis added). A statute of limitations pertains to the latter, but not the former, by establishing a period for a veteran to seek a remedy for the violation of a right to benefits. Section 5110(b)(1)'s effective-date provision, on the other hand, is an element of the veteran's claim seeking benefits that pertains to the creation of a right to benefits but not to the remedies for violations of that right. *Cf. Cloer*, 654 F.3d at 1335 (explaining that § 300aa-11(c)(1)(D)(i)'s requirement a claimant suffer the effects of a vaccine-related injury for "more than 6 months after the administration of the vaccine" is "a condition precedent to filing a petition for compensation" that "is intended to restrict eligibility to the compensation program, not to act as a statutory tolling mechanism for

the [36-month] statute of limitations"). Accordingly, § 5110(b)(1), which establishes the effective date of a claim whose filing is necessary "for benefits to be paid or furnished" by the VA, is not a statute of limitations because it pertains only to the creation of the right to be paid benefits, and not to the provision of remedies for violations of that right. For this reason, too, Congress would not have viewed § 5110(b)(1) as a statute of limitations.

D

Having determined that Congress would not have viewed § 5110(b)(1) as a statute of limitations, we are left to consider whether some other background principle of law supports applying *Irwin*'s presumption of equitable tolling to § 5110(b)(1)'s effective-date provision. We see nothing in the cases identified by Mr. Arellano and Judge Dyk that would establish any such principle of law.

1

We are unaware of any case that applies *Irwin*'s presumption to a statutory provision functionally similar to § 5110(b)(1)—namely, one that does not encourage the diligent prosecution of a claim by barring a claimant from seeking relief after the statutory period elapses and, instead, establishes an element of the claim itself. Instead, cases applying *Irwin*'s presumption have all involved a time limit that functions as a statute of limitations by foreclosing a plaintiff from seeking relief once that time has passed. *See, e.g.*, *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015) (two-year time limit for bringing a tort claim against the government); *Holland v. Florida*, 560 U.S. 631 (2010) (one-year period for filing a petition for federal habeas relief); *Scarborough v. Principi*, 541 U.S. 401 (2004) (30-day deadline for filing an application for attorney's fees under the Equal Access to Justice Act); *Bailey*, 160 F.3d at 1363–64 (120-day time limit to file notice of appeal with the Veterans Court); *Cloer*, 654 F.3d at 1341–42

(36-month deadline to file a petition under the Vaccine Act).

Mr. Arellano and Judge Dyk point to a statute governing Social Security disability insurance benefits, 42 U.S.C. § 423(b), which states: "An individual who would have been entitled to a disability insurance benefit for any month had he filed application therefor before the end of such month shall be entitled to such benefit if such application is filed before the end of the 12th month immediately succeeding such month." In other words, this provision provides that qualifying claimants may receive retroactive benefits up to a year prior to the date of application. But as Mr. Arellano and amici concede, courts have so far *declined* to find equitable exceptions available for this statutory period. *See* Appellant's Suppl. Br. 45–49; Military-Veterans Advocates Amicus Br. 8; *see also Shepherd ex rel. Shepherd v. Chater*, 932 F. Supp. 1314, 1318 (D. Utah 1996) ("Courts have uniformly refused to find equitable exceptions to the statutory limit on retroactive benefits."). Moreover, several cases explain that "filing [an application within § 423(b)'s one year period] is a substantive condition of eligibility" for retroactive Social Security benefits, rather than a statute of limitations that may be equitable tolled. *See Yeiter v. Sec'y of Health & Hum. Servs.*, 818 F.2d 8, 10 (6th Cir. 1987) (explaining that appellant was not entitled to retroactive benefits from an earlier date because she had not filed an application within 12 months of that date, and "filing is a substantive condition of eligibility"); *Sweeney v. Sec'y of Health, Ed. & Welfare*, 379 F. Supp. 1098, 1100 (E.D.N.Y. 1974) (declining to apply equitable exceptions based on physical disability to award retroactive benefits because "the filing of an application [is] a condition precedent to payment of benefits"). While courts have yet to analyze the availability of equitable tolling for this statute under the *Irwin* framework, neither Mr. Arellano nor amici argue that *Irwin* compels a different result. *See* Military-Veterans Advocates Amicus Br. 10 ("Nonetheless, the

reasoning of these courts points toward the conclusion that *Irwin*'s presumption of equitable tolling would be rebutted in the context of retroactive Social Security benefits under §§ 402(j) and 423.").

Judge Dyk nonetheless contends that § 423(b) is not only a "statute of limitations," but that its approach to claims involving retroactive benefits is "not unusual" in government benefit programs, which purportedly "often" permit claimants to recover future benefits while establishing a statute of limitations for past benefits. *See* Dyk Op. at 8. He cites a single district court case for this proposition, *see Begley v. Weinberger*, 400 F. Supp. 901, 911 (S.D. Ohio 1975), which merely opines in passing that § 423(b) is a "statute of limitations" for "retroactive disability insurance benefits." *Begley*, however, does not discuss equitable tolling, and its holding does not rely on its characterization of § 423(b) as a statute of limitations. In the 46 years since *Begley* was decided, no opinion has cited it for the proposition that § 423(b) is a statute of limitations, until Judge Dyk's opinion in this appeal. Nor are we aware of any other case characterizing § 423(b) as a "statute of limitations." Section 423(b) thus fails to establish a background principle of equitable tolling applicable to § 5110(b)(1).[6]

---

[6]    If § 423(b) were deemed a statute of limitations, as Judge Dyk contends, such a determination would be a trailblazing event, making equitable tolling potentially available (absent congressional intent otherwise) in large swaths of Social Security cases involving retroactive benefits, contrary to what courts had uniformly held pre-*Irwin*. Even more troubling is Judge Dyk's assertion that government benefits programs "often" include "statutes of limitations" for retroactive benefits. If this too is accurate, then the ramification of his reasoning is that equitable tolling could potentially apply to many, if not all, of those statutes

Mr. Arellano responds that a background principle of law applying equitable tolling to functionally similar statutes is not necessary for *Irwin*'s presumption to apply to § 5110(b)(1).  Appellant's Reply Br. 13–14.  He contends that *Scarborough* expressly rejected any such requirement by explaining that "it is hardly clear *Irwin* demands a precise private analogue," especially in "matters such as the administration of benefits programs."  541 U.S. at 422; *see also id.* ("Because many statutes that create claims for relief against the United States or its agencies apply *only* to Government defendants, *Irwin*'s reasoning would be diminished were it instructive only in situations with a readily identifiable private-litigation equivalent." (emphasis added)).  But seeking a background principle of law that demonstrates equitable tolling is not exclusive to statutes of limitations is a far cry from requiring a "precise private analogue."  *Scarborough* itself is instructive on this point.  There, the Supreme Court considered whether a timely application for attorneys' fees under the Equal Access to Justice Act (EAJA) may be amended after the 30-day filing deadline expired to cure a defect in the application.  The Court held that a curative amendment should be allowed based on the "relation back" doctrine, which permits a later amendment to relate back to the day of the original filing under certain circumstances.  In doing so, the Court rejected an argument that the relation back doctrine is limited to its codification in the Federal Rules of Civil Procedure, which governs only amended district court "pleadings" and not EAJA fee applications.  *See id.* at 417–18.  While not requiring "a precise private [litigation] analogue," the Court observed that (1) it had previously applied the relation back doctrine in "analogous settings" to fee applications; and (2) the doctrine itself predated the

---

(assuming *Irwin*'s presumption has not been rebutted), thereby opening the door for retroactive benefits in numerous different statutory schemes.

Federal Rules and had "its roots in [the] former federal equity practice" of the courts. *Id.* at 417–18. Rather than rejecting the requirement for a background principle of law, the Court's application of the relation back doctrine in the context of an EAJA fee application was premised on just such a principle—namely, the historical practice of the relation back doctrine outside the limited context of district court pleadings. Here, however, courts have applied the presumption of equitable tolling only to statutes of limitations that run once a cause of action accrues, and Mr. Arellano has not identified a case or background principle of law demonstrating otherwise.

2

The language and administrative context of § 5110(b)(1), moreover, are unlike that of any statute of limitations we have seen. Neither *Irwin*, nor any of the cases in this line, considered a statute of limitations having "effective date" language. At the same time, § 5110(b)(1) does not use the typical statute-of-limitations language establishing when a plaintiff must file an action against a defendant in a tribunal or else lose the claim—the setting addressed by all statutory provisions treated as statutes of limitation in the *Irwin* line.

Section 5110(b)(1) instead addresses a structurally distinct setting—i.e., filing an initial claim with a federal agency to obtain monetary benefits from that agency, wherein the claim's receipt date determines the amount of awardable benefits but not whether the claim is barred. Unlike the traditional context in which a statute of limitations operates, the relevant "defendant" and "tribunal" for § 5110(b)(1) are one and the same (the VA), and the "defendant" has yet to violate any legal duty owed to the claimant that would give rise to a cause of action. While Judge Dyk asserts that the Supreme Court and several circuits have found equitable tolling applicable to "time requirements in administrative agency proceedings," *see* Dyk Op.

at 3, none of the cases he cites address the type of agency proceedings relevant here.  These cases instead involve filing deadlines for administrative complaints, which address the same structural setting as any statute of limitations, wherein a complainant seeking redress for a respondent's breach of duty before an independent tribunal.  *Cloer*, as previously explained, involved a deadline for filing a petition before a federal court and not an agency.  *See* 42 U.S.C. § 300aa–11(a)(1).  This deadline is effectively no different than a traditional statute of limitations that establishes a period in which a plaintiff may sue a government defendant in federal court.  Similarly, *Zipes*, *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996), and *Farris v. Shinseki*, 660 F.3d 557, 563 (1st Cir. 2011), which all relate to the deadline for filing a charge of discrimination with the EEOC, address a setting in which an injured complainant seeks redress before a separate entity (the EEOC) with the authority to address the asserted breach of duty by the employer, whether through adjudication, enforcement, or lesser measures.  Thus, none of these cases speak to filing an initial claim with a federal agency to obtain monetary benefits from that agency, and we are unaware of any case holding that a provision with language or operational context similar to § 5110(b)(1) is a statute of limitations.

Section 5110(b)(1), for these additional reasons, would not have looked like a statute of limitations to Congress, meaning we cannot presume that Congress intended for this provision to carry the default feature of equitable tolling.  The effective-date provision is therefore not a statute of limitations but merely determines the starting date for the right to payment on a veteran's benefits claim.  Because no background principle of law establishes that we may equitably toll such a statutory provision, *Irwin*'s presumption is inapplicable to § 5110(b)(1)'s effective date provision.  Our reasoning here is consistent with *Andrews*' longstanding holding that principles of equitable tolling are inapplicable to the one-year period in § 5110(b)(1), *see* 351 F.3d at

1137–38, our equally divided court today leaves that holding undisturbed.

E

Although § 5110(b)(1) is not a statute of limitations amenable to equitable tolling, even if *Irwin*'s presumption were to apply, equitable tolling would nonetheless be unavailable because it is "inconsistent with the text of the relevant statute." *Young*, 535 U.S. at 49 (quoting *United States v. Beggerly*, 524 U.S. 38, 48 (1998)). "[T]he word 're-buttable' means that the presumption is not conclusive," and "[s]pecific statutory language, for example, could rebut the presumption by demonstrating Congress' intent to the contrary." *John R. Sand & Gravel Co.*, 552 U.S. at 137–38. Here, *Irwin*'s presumption—were it to apply—would be rebutted by Congress' highly detailed statutory scheme dictating specific legislative choices for when a veteran's claim may enjoy an effective date earlier than the date it was received by the VA.

There are several ways to rebut the presumption of equitable tolling, all of which seek to answer *Irwin*'s "negatively phrased question:  "Is there good reason to believe that Congress did *not* want the equitable tolling doctrine to apply?"  *See Brockamp*, 519 U.S. at 350.  One way "is to show that Congress made the time bar at issue jurisdictional." *Kwai Fun Wong*, 135 S. Ct. at 1631.  Another way is to demonstrate that the statutory text precludes equitable tolling.  *See Brockamp*, 519 U.S. at 352; *Beggerly*, 524 U.S. at 48.  Additionally, the statutory history and administrative context can demonstrate that Congress did not intend for equitable tolling to apply.  *See Auburn*, 568 U.S. at 159–60.  We address each in turn.

Neither party here argues that § 5110(b)(1)'s effective-date provision is jurisdictional.  *See* Appellant's Supp. Br. 24–28; Appellee's Supp. Br. 57–60.  And for good reason.  Nothing in § 5110 purports to define a tribunal's jurisdiction, and the filing of a benefits claim more than one year

after discharge does not deprive any tribunal of jurisdiction to adjudicate that claim. *Cf. Henderson*, 562 U.S. at 438 (finding no clear indication that Congress intended for § 7266(a)'s 120-day filing deadline for Veterans Court appeals to be jurisdictional where the statute "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the Veterans Court" (cleaned up)). Filing a claim more than a year after discharge merely means that a provision of § 5110 other than § 5110(b)(1) governs the claim's effective date.

But concluding that § 5110(b)(1)'s effective date provision is nonjurisdictional does not end our inquiry because "Congress may preclude equitable tolling of even a nonjurisdictional statute of limitations." *See Kwai Fun Wong*, 135 S. Ct. at 1631 n.2; *see also Auburn*, 568 U.S. at 149 (holding that "the presumption in favor of equitable tolling does not apply" to a nonjurisdictional agency appeal deadline given the statutory history and administrative context); *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019) (the mere fact that a statutory provision "lacks jurisdictional force . . . does not render it malleable in every respect," for such provisions may nonetheless be "mandatory" and "not susceptible [to] equitable [tolling]"). "Whether a rule precludes equitable tolling turns not on its jurisdictional character but rather on whether the *text* of the rule leaves room for such flexibility." *Id.* (emphasis added). We therefore look to the statutory text to discern whether Congress intended to displace the general availability of equitable tolling with its own preferred regime of concrete deadlines.

Section 5110 begins with the default rule: "*Unless specifically provided otherwise in this chapter*, the effective date of an award . . . shall not be earlier than the date of receipt of application therefor." § 5110(a)(1) (emphasis added). Section 5110(a)(1), together with § 5101(a)'s requirement that a claim "must be filed in order for benefits to be paid or furnished," establishes the baseline rule that

no benefits may accrue or be awarded before a claim asserting the right to such benefits is filed, "unless specifically provided" for by statute. Section 5110 then proceeds to list more than a dozen detailed exceptions to the default rule that permit an earlier effective date and, as a result, additional benefits accruing up to one year before the VA receives the claim. Section 5110(b)(1)'s day-after-discharge provision is one such enumerated exception. By mandating that any exception to the default rule must be provided for "specifically" and "in this chapter," the most natural reading of § 5110 is that Congress implicitly intended to preclude the general availability of equitable tolling by explicitly including a more limited, specific selection of equitable circumstances under which a veteran is entitled to an earlier effective date and specifying the temporal extent of the exceptions for those circumstances. *See TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001). In other words, the text of § 5110 makes clear that Congress did not intend for the VA or the courts to create additional exceptions other than those choices it "specifically provided" in the statute. Because none of § 5110's specifically enumerated exceptions, nor any other provision "of this chapter," provide for equitable tolling of § 5110(b)(1)'s one-year period, such tolling is unavailable as it is not "specifically provided" for "in this chapter."

Mr. Arellano and Judge Dyk respond that courts have construed statutory language far more imperative than that of § 5110(a)(1) to permit equitable tolling. Specifically, they rely on *Kwai Fun Wong*'s analysis of the Federal Tort Claims Act, which states that "[a] tort claim against the United States *shall be forever barred* unless it is presented [to the agency] within two years . . . or unless action is begun within six months." 28 U.S.C. § 2401(b) (emphasis added). There, the Supreme Court held that the phrase "shall be forever barred," though "mandatory" and "emphatic," did not render the filing deadline at issue jurisdictional and foreclosed from equitable tolling. *Kwai Fun*

*Wong*, 135 S. Ct. at 1632–33.  But this argument misses the mark.  *Kwai Fun Wong* stands for the unremarkable proposition that *Irwin*'s presumption is not rebutted merely because the statutory text "reads like an ordinary, run-of-the-mill statute of limitations" to bar relief unless a claim is brought within a specified amount of time.  *Id.* at 1633 (quoting *Holland*, 560 U.S. at 647).  Holding otherwise would have effectively eviscerated *Irwin*'s presumption because, as the Court explained, most statutes of limitations are framed in that manner.  *Id.* at 1632.  The Court clarified that "Congress must do something special, beyond setting an exception-free deadline," to prohibit a court from equitably tolling the deadline.  *Id.*  Congress did just that here:  not only is § 5110(b)(1)'s one-year period itself an exception to the default effective-date rule, § 5110 further provides numerous other detailed, technical exceptions to the default effective-date rule, thereby creating a catalog of congressional choices that foreclose courts from recognizing any additional, unwritten exceptions.

Indeed, § 5110's enumeration of a wide range of specific exceptions to the default rule hews closer to the "highly detailed" and "technical" exceptions that foreclosed equitable tolling in *Brockamp* than to *Kwai Fun Wong*'s "fairly simple language [that] can often [be] plausibly read as containing an implied 'equitable tolling' exception."  *Brockamp*, 519 U.S. at 350.  At issue in *Brockamp* was a statute reciting time limits for taxpayers to file tax refund claims.  Just as with § 5110, the *Brockamp* statute provided a default rule with "basic time limits" for filing such claims, followed by "very specific exceptions" establishing "special time limit rules" for certain claims relating to precise circumstances ("operating losses, credit carrybacks, foreign taxes, self-employment taxes, worthless securities, and bad debts").  *Id.* at 351–52.  The Court concluded that the statute's "detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate . . .

that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote," thereby rebutting the presumption of equitable tolling. *Id.* at 352. The same reasoning applies here, where Congress has explicitly provided more than a dozen detailed exceptions to § 5110(a)(1)'s default rule prohibiting an effective date earlier than the date of receipt. And "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of a contrary legislative intent." *TRW*, 534 U.S. at 28 (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980))[7]; *see also Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) ("[i]t is a fundamental principle of statutory interpretation that absent provisions cannot be supplied by the courts" because doing so "is not a construction of a statute, but, in effect, an enlargement of it by the court" (internal quotation marks omitted)).

The implication that § 5110's explicitly enumerated exceptions preclude the judicial recognition of additional equitable exceptions can, of course, be overcome by "contrary legislative intent." *See TRW*, 534 U.S. at 28 (quoting *Andrus*, 446 U.S. at 616–17). But we see nothing in the statutory text, structure, or history that persuades us that

---

[7]    Mr. Arellano also argues that the principle of statutory construction quoted from *TRW* applies only where it would render one of those exceptions insignificant or superfluous. *E.g.*, Appellant's Supp. Reply Br. 21–22. But while that principle may be strongest in such a case, it is clearly instructive even where no exception would be effectively read out of the statute. *See Andrus*, 446 U.S. at 616–17 (declining to recognize an additional exception where statute recites explicitly enumerated exceptions to a general prohibition, even where no other exception would be rendered superfluous by the addition); *United States v. Smith*, 499 U.S. 160, 166 (1991) (same).

such an intent exists for § 5110. To the contrary, § 5110's enumerated exceptions confirm that Congress has already considered which equitable considerations may provide a retroactive effective date and declined to provide the relief Mr. Arellano seeks. These exceptions cover specific circumstances beyond the veteran's control that may delay the filing of a claim, such as: discharge from the military, § 5110(b)(1); increase in the severity of a disability, § 5110(b)(3); the "permanent[] and total[] disab[ility]" of a veteran, § 5110(b)(4); death of a spouse, § 5110(d); and correction of military records, § 5110(i).[8]

More importantly, § 5110(b)(4) addresses the precise circumstances that prevented Mr. Arellano—a "veteran

---

[8]    Though several of § 5110's enumerated exceptions address equitable circumstances in which the filing of a claim may be delayed, Judge Dyk nonetheless contends that no provision of § 5110 other than § 5110(b)(4) "speak[s] to equitable tolling," and § 5110(b)(4) alone "can hardly be read as evincing a desire by Congress to eliminate equitable tolling" generally as to disability compensation. Dyk Op. at 16. He does not explain why, if retroactive effective date provisions are statutes of limitations (as he insists), provisions analogous to § 5110(b)(4) that permit an earlier effective date when a claimant delays filing a claim due to the death of a spouse or parent, an increase in disability severity, or even discharge from military service do not likewise "speak to equitable tolling." Judge Dyk appears to argue that *Irwin*'s presumption may not be rebutted unless a statute explicitly references more than one circumstance for which courts have traditionally permitted equitable tolling (e.g., defective pleadings, deception through defendant's misconduct, severe disability) but cites no support for such a proposition. Nor would the enumerated exceptions in *Brockamp* satisfy his heightened standard for rebutting *Irwin*'s presumption.

who is permanently and totally disabled"—from filing his claim earlier, but in the context of disability *pension*, *see* 38 U.S.C. ch. 15, and not the disability compensation at issue here, *id.*, ch. 11. Section 5110(b)(4) provides a one-year grace period for disability pension filings by a permanently and totally disabled veteran who was "prevented by a disability from applying for disability pension for a period of at least 30 days beginning on the date on which the veteran became permanently and totally disabled." This provision demonstrates that Congress considered the very circumstances that delayed Mr. Arellano from filing a claim and nonetheless declined to afford equitable relief beyond what was already provided in § 5110(b)(1). It is not our role as a court to second-guess Congress' judgment as to when such equitable exceptions are warranted. To decide otherwise would amount to "[a]textual judicial supplementation," which "is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision" that would equitably toll § 5110(b)(1) for permanently and totally disabled veterans. *See Rotkiske*, 140 S. Ct. at 361; *cf. Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."). We therefore decline, as the Supreme Court did in *Brockamp*, to read additional, unwritten equitable exceptions into the statute.

Though we need not look beyond the unambiguous statutory text, the statutory history of § 5110 reinforces our conclusion that Congress did not intend for equitable tolling to apply to § 5110(b)(1)'s effective date provision. In the seventeen years since our court decided *Andrews* in 2003, we have repeatedly followed its holding, each time reiterating that equitable tolling is inapplicable to § 5110's effective date rules. *See Titone v. McDonald*, 637 F. App'x 592, 593 (Fed. Cir. 2016) (per curiam); *Butler v. Shinseki*,

603 F.3d 922, 926 (Fed. Cir. 2010) (per curiam); *AF v. Nicholson*, 168 F. App'x 406, 408–09 (Fed. Cir. 2006); *Ashbaugh v. Nicholson*, 129 F. App'x 607, 609 (Fed. Cir. 2005) (per curiam).  Congress has amended § 5110 four times since *Andrews*, and at no point has it expressed disapproval of *Andrews* and its progeny or otherwise indicated that equitable tolling is available under this statute.  *See Auburn*, 568 U.S. at 159 (no legislative intent of equitable tolling where Congress had amended the relevant statute "six times since 1974, each time leaving [the provision at issue] untouched" and had never "express[ed] disapproval" of the agency's longstanding regulation setting deadlines).  To the contrary, Congress' amendments adding provisions § 5110(a)(2)–(3) under the Veterans Appeals Improvement and Modernization Act of 2017 (AMA), Pub. L. No. 115–55, § 2(*l*), 131 Stat. 1105, 1110, underscore an intent to continue limiting retroactivity to one year.  *See* § 5110(a)(2) (a claim receiving an adverse decision retains "the date of the filing of the initial application for a benefit" as the effective date on appeal if the claim is "continuously pursued" within "one year after the date" of the adverse decision); § 5110(a)(3) (the effective date of "supplemental claims received *more than one year*" after the RO or Board decision "shall not be earlier than the date of receipt of the supplemental claim" (emphasis added)).

The statutory history of § 5110(b)(4) also confirms that Congress did not intend to provide more equitable relief than what was specifically enumerated in the statute.  When § 5110(b)(4) was proposed in 1973, Congress explained that "[t]he *1-year period* prescribed by the proposal . . . is considered *reasonable*" to address the filing "delays" of "permanently and totally disabled" veterans whose "very condition upon which entitlement may depend may also prevent prompt application for benefit."  *See* H.R. Rep. No. 93-398), at 14 (1973) (emphases added).  Congress, moreover, remarked that the proposed one-year grace period would bring the effective-date rules governing disability

pension into conformity with those already governing disability compensation in § 5110(b)(1) and death benefits in § 5110(d). *See id.* Because § 5110(b)(4)'s one-year grace period was considered a "reasonable" equitable remedy for filing delays by permanently and totally disabled veterans, this statutory history supports our conclusion that Congress did not intend for equitable tolling of § 5110(b)(1)'s analogous one-year grace period.

While acknowledging that § 5110(b)(4) speaks to equitable tolling and indicates "Congressional willingness to delay veterans' filing obligations where a disability makes meeting them difficult or impossible," *see* Dyk Op. at 26, Judge Dyk nonetheless argues that this provision merely signals "a beneficent Congressional act, [and] not a rebuttal of the *Irwin* presumption," *id.* at 16 (citing *Cloer*, 654 F.3d at 1343).[9] But this ignores *Cloer*'s precise reasoning. *Cloer* explains that enumerated statutory exceptions do not necessarily rebut *Irwin*'s presumption where those exceptions address a "special need" that is *unrelated* to equitable tolling concerns. *See id.* Unlike § 5110(b)(4) and other exceptions addressing specific equitable circumstances warranting a delayed claim filing, *Cloer* concluded that the two exceptions to the Vaccine Act's 36-month filing deadline are driven by "specific concern[s] unrelated to equitable tolling considerations," such as minimizing "confusion" and addressing "scientific advances in medicine," and thus do not "show a desire by Congress to bar equitable tolling." *Id.* at 1343–44; *see also, id.* at 1343 ("Individual factual

---

[9] Despite maintaining that § 5110(b)(4) does not signal congressional intent to preclude equitable tolling beyond the statutory limits, Judge Dyk nonetheless claims this provision demonstrates congressional intent to deny Mr. Arellano and other disabled claimants with a caregiver or other representative equitable relief beyond what is expressly provided by statute. *See* Dyk Op. at 22–24.

circumstances, the first of equitable tolling claims, played no role in enactment of this provision.").

Mr. Arellano and Judge Dyk also argue that § 5110's listed exceptions are irrelevant because they are exceptions to § 5110(a)(1)'s default effective-date rule, and not § 5110(b)(1)'s one-year grace period. In their view, the question is whether § 5110(b)(1)'s one-year period can be tolled, and because that period does not itself have any enumerated exceptions, precedent such as *TRW* and *Brockamp* are not controlling. But this argument ignores that tolling § 5110(b)(1)'s one-year grace period would operate as an exception to not only § 5110(b)(1)'s one-year grace period but also to § 5110(a)(1)'s default rule. This follows because, as mentioned, § 5110(b)(1) is itself an equitable exception to § 5110(a)(1)'s default rule. *Cf. Beggerly*, 524 U.S. at 48 (declining to further toll a statute "providing that the statute of limitations will not begin to run until plaintiff 'knew or should have known of [the government's] claim,' [because it] has already effectively allowed for equitable tolling"). It would be odd to conclude that, because Congress chose to soften the default effective-date rule by providing specific enumerated equitable exceptions, it has somehow opened the door for courts to create their own exceptions-to-the-exception through equitable tolling.

Mr. Arellano further argues that the relevant administrative context and subject matter of § 5110(b)(1)—veterans' benefits—support equitable tolling. We acknowledge that Congress is more likely to have intended equitable tolling for statutes "designed to be 'unusually protective' of claimants" where "laymen, unassisted by trained lawyers, initiate the process." *See Auburn*, 568 U.S. at 160 (citing *Bowen v. City of New York*, 476 U.S. 467, 480 (1986) and *Zipes*, 455 U.S. at 397). And it is undoubtedly true that the statutory scheme for veterans' benefits is "uniquely pro-claimant [in] nature," *Hensley v. West*, 212 F.3d 1255, 1262 (Fed. Cir. 2000), and imbued with "[t]he solicitude of

Congress for veterans," *United States v. Oregon*, 366 U.S. 643, 647 (1961).

But these general background principles cannot override the unambiguous meaning of the statutory text. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415–16 (2019) (ambiguity often resolved by full consideration of "text, structure, history, and purpose"); *cf. Andrus*, 446 U.S. at 618–19 ("[A]lthough the rule by which legal ambiguities are resolved to the benefit to the Indians is to be given the broadest possible scope, a canon of construction is not a license to disregard clear expressions of . . . congressional intent." (cleaned up)); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("canons of construction are no more than rules of thumb," and the text is the "one, cardinal canon" a court must turn to "before all others"). Here, for the reasons we have set forth, the comprehensiveness of the congressionally enumerated exceptions to the § 5110(a)(1) default rule leave no room for additional judicially recognized exceptions. Similarly, the language, context, and characteristics of the § 5110(b)(1) time provision leave no room for reasonably concluding that Congress viewed it as a statute of limitations. Those conclusions leave no ambiguity. Where, as here, "the words of a statute are unambiguous, this first step of the interpretive inquiry is our last." *Rotkiske*, 140 S. Ct. at 360.

We recognize there are circumstances under which it may seem unjust to preclude equitable tolling. But where the statutory text demonstrates "a clear intent to preclude tolling, courts are without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving." *Nutraceutical*, 139 S. Ct. at 714; *see also California v. Sierra Club*, 451 U.S. 287, 297 (1981) ("The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide."). "Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of

legislation." *Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963); *see also United States v. First Nat'l Bank of Detroit*, 234 U.S. 245, 260 (1914) ("The responsibility for the justice or wisdom of legislation rests with the Congress, and it is the province of the courts to enforce, not to make, the laws.").

For these reasons, equitable tolling is inconsistent with Congress' intent in enacting § 5110(b)(1), and *Irwin*'s presumption—were it to apply in this instance—would have been rebutted.

F

Lastly, we briefly address Judge Dyk's conclusion that equitable tolling is unavailable on the undisputed facts of Mr. Arellano's appeal. *See* Dyk Op. at 26 n.20. Because both the Board and the Veterans Court concluded that equitable tolling was categorically unavailable for § 5110(b)(1) as a matter of law, neither had reason to consider whether the specific facts of Mr. Arellano's case justified equitable tolling. Nor did they consider whether further factual development would be warranted if equitable tolling were not categorically unavailable. In the event of a reversal, Mr. Arellano has requested that we remand this case for further proceedings so he can present why his factual circumstances warrant equitable tolling. *See* Appellant's Suppl. Br. 49; Appellant's Br. 32. The government, for its part, has never argued in this court that we can—or should—affirm the denial of equitable tolling on the facts of Mr. Arellano's case; it has only argued that equitable tolling is unavailable as a matter of law.

However, Judge Dyk contends that we may determine the application of equitable tolling in the first instance "[w]here the facts are undisputed, [and] all that remains is a legal question, even if that legal question requires the application of the appropriate standard to the facts of a particular case." Dyk Op. at 26 n.20 (quoting *Former Employees of Sonoco Prod. Co. v. Chao*, 372 F.3d 1291,

1294–95 (Fed. Cir. 2004)).  But neither *Former Employees*, nor any case cited within, holds that we may apply a legal standard to the facts where the Veterans Court (and the Board):  (1) did not address any of those facts in denying equitable tolling; (2) made no factual findings on this issue; (3) did not consider whether further factual development may be warranted to adequately answer that question; and (4) did not consider Judge Dyk's rigid "caregiver rule" that bars equitable tolling for totally and permanently disabled veterans who have a caregiver.  For that reason, it is un-surprising that Mr. Arellano has not alleged "any special circumstances" in relation to his caregiver, as Judge Dyk observes, since no one until today had suggested that hav-ing a caregiver creates a default presumption against equi-table tolling in this context or in any other setting where equitable tolling can arise.  Thus, even if *Irwin*'s presump-tion of equitable tolling were to apply to § 5110(b)(1), which it does not, we would remand this case for further factual development—which is all the more justified because Mr. Arellano has expressly requested this outcome under such circumstances and no party has argued that we may affirm the Veterans Court's decision on factual grounds.

## CONCLUSION

For the aforementioned reasons, and consistent with our longstanding holding in *Andrews*, § 5110(b)(1) is not a statute of limitations subject to *Irwin*'s presumption of eq-uitable tolling.  But even if *Irwin*'s presumption were to ap-ply, it would be rebutted by the statutory text of § 5110, which evinces clear intent from Congress to foreclose equi-table tolling of § 5110(b)(1)'s one-year period.

# United States Court of Appeals for the Federal Circuit

---

**ADOLFO R. ARELLANO,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1073

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-3908, Judge Michael P. Allen.

---

Decided:  June 17, 2021

---

DYK, *Circuit Judge*, with whom NEWMAN, O'MALLEY, REYNA, WALLACH, and STOLL, *Circuit Judges*, join, concurring in the judgment.

The court here agrees that Mr. Arellano's claim for benefits was untimely, but the court is equally divided on the question whether 38 U.S.C. § 5110(b)(1) is subject to equitable tolling.  Judge Chen (joined by Chief Judge Moore and Judges Lourie, Prost, Taranto, and Hughes) would hold that the section is not a statute of limitations, and, even if it were, the presumption of equitable tolling under *Irwin* has been rebutted.  An equal number of judges

2                                     ARELLANO v. MCDONOUGH

(Judges Newman, O'Malley, Reyna, Wallach, Stoll, and myself) join this opinion and would hold that § 5110(b)(1) is a statute of limitations subject to equitable tolling, that the *Irwin* presumption of equitable tolling applies, but that § 5110(b)(1) cannot be equitably tolled for mental disability in the circumstances of this case.

I

The effective date of an award of service-connected benefits is governed by 38 U.S.C. § 5110. "Unless specifically provided otherwise in this chapter, the effective date of an award . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."  38 U.S.C. § 5110(a)(1).  An exception to § 5110(a)(1) is available under § 5110(b)(1), which provides:

> The effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release.

38 U.S.C. § 5110(b)(1); *see also* 38 C.F.R. § 3.400(b)(2)(i) (2020) ("Day following separation from active service or date entitlement arose if claim is received within 1 year after separation from service; otherwise, date of receipt of claim, or date entitlement arose, whichever is later.").

Here, the claim for benefits was filed on June 3, 2011, thirty years after the veteran's discharge, and benefits were allowed as of the date the claim was filed, June 3, 2011.  The question is whether § 5110(b)(1) may be equitably tolled based on mental disability so that the veteran can receive retroactive benefits to the date his entitlement arose, which was within a year of his discharge, thirty years earlier.

## II

"Time requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'" *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990) (quoting *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 27 (1989)). *Irwin* held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95–96.

The Supreme Court and several circuits have found equitable tolling to be applicable to time requirements in administrative agency proceedings. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the [Equal Employment Opportunity Commission] is . . . a requirement that, like a statute of limitations, is subject to . . . equitable tolling."); *Farris v. Shinseki*, 660 F.3d 557, 563 (1st Cir. 2011) (citation omitted) ("[F]ailure to comply with an agency's applicable time limit may expose the plaintiff's federal law suit to dismissal . . . subject to narrowly applied equitable doctrines such as tolling . . . ."); *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996) ("Because the deadlines for filing administrative complaints operate as statutes of limitations, the doctrines of equitable tolling and estoppel apply."). The Supreme Court has "never suggested that the presumption in favor of equitable tolling is generally inapplicable to administrative deadlines," *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 162 (2013) (Sotomayor, J., concurring), and has suggested that *Irwin* can apply to "matters such as the administration of benefit programs," *Scarborough v. Principi*, 541 U.S. 401, 422 (2004).

## III

The framework governing the *Irwin* presumption of equitable tolling has two steps.

4                                        ARELLANO v. MCDONOUGH

The first step is determining whether the statute is a statute of limitations, in which case the *Irwin* presumption will apply. Courts "have only applied [the] presumption [of equitable tolling] to statutes of limitations," *Lozano v. Montoya Alvarez*, 572 U.S. 1, 13–14 (2014), or a "filing period" that "operate[s] as a statute of limitations," *Zipes*, 455 U.S. at 394. The second step is determining if the presumption has been rebutted.

A

Judge Chen at the first step would hold that 38 U.S.C. § 5110(b)(1) is not a statute of limitations or otherwise subject to tolling, and he would reaffirm our *Andrews* panel decision in this respect. I think this view is quite clearly incorrect.

Judge Chen urges that the limitations period on past benefits for disability compensation in § 5110(b)(1) is not a statute of limitations because the one-year period "[1] is not triggered by harm from the breach of a legal duty owed by the opposing party, and [2] it does not start the clock on seeking a remedy for that breach from a separate remedial entity." Chen Op. 13 (citing 1 Calvin W. Corman, LIMITATION OF ACTIONS, § 6.1, at 370 (1991)). In Judge Chen's view, § 5110(b)(1) is not a statute of limitations because "there is no duty, or breach of duty, at the onset of § 5110(b)(1)'s one-year period (i.e., the day after discharge)" and "no remedial authority separate from the [Department of Veterans Affairs ("VA")] is involved in an initial application for veterans' benefits." *Id.* at 13–14.

Judge Chen's opinion is bereft of support for these supposed rules. The cited treatise contains only general language describing general principles of statutes of limitations. *See* Corman, *supra*, § 6.1, at 370 ("The earliest opportunity for a complete and present cause of action is that moment when the plaintiff has suffered a legally recognizable harm at the hands of the defendant, such as the time of contract breach or the commission of a tortious

wrong."). Judge Chen cites no case, and I am aware of none, holding that statutes of limitations are limited as Judge Chen suggests.[1]

The cases establish that there are no such rules. The notion that statutes of limitations are triggered only by a breach of legal duty is quite inconsistent with cases holding that a provision barring benefits for failure to file within a prescribed period constitutes a statute of limitations, regardless of any alleged breach of duty by the government. This has been made clear by *Scarborough*, where (as noted above) the Supreme Court explained that *Irwin*'s reasoning may extend to "the administration of benefit programs." 541 U.S. at 422.

A primary example of a no-fault statute of limitations is the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), which requires that, for vaccines administered after October 1, 1988, a "petition" for "compensation" for a vaccine-related injury be filed within 36 months "after the date of the occurrence of the first symptom or manifestation of onset . . . of such injury." 42 U.S.C. § 300aa-16(a)(2).

Vaccine Act claims are not tied to fault by the government. The system established by the Vaccine Act "was 'intended to be expeditious and fair' and 'to compensate persons with recognized vaccine injuries . . . without a

---

[1]    Judge Chen relies on *Hallstrom*, which concerned the citizen suit provision of the Resource Conservation and Recovery Act of 1976 that required 60 days' notice before filing suit. *See* 493 U.S. at 22 (citing 42 U.S.C. § 6972(b)(1) (1982)). *Hallstrom* noted in passing that, "[u]nlike a statute of limitations," the "60-day notice provision is not triggered by the violation giving rise to the action." *Id.* at 27. The Supreme Court's characterization of the notice provision at issue in *Hallstrom* hardly suggests that a violation is essential to the existence of statute of limitations.

demonstration that a manufacturer was negligent or that a vaccine was defective.'" *Zatuchni v. Sec'y of Health & Hum. Servs.*, 516 F.3d 1312, 1316 (Fed. Cir. 2008) (quoting H.R. Rep. 99-908, at 12, *reprinted in* 1986 U.S.C.C.A.N. 6344, 6353).

> Under this compensation system, vaccine-injured persons may obtain a full and fair award for their injuries even if the manufacturer has made as safe a vaccine as possible. Petitioners are compensated because they suffered harm from the vaccine—even a 'safe' one—not because they demonstrated wrongdoing on the part of the manufacturer.

H.R. Rep. 99-908, at 26, *reprinted in* 1986 U.S.C.C.A.N. at 6367.

We have nonetheless held en banc that 42 U.S.C. § 300aa-16(a)(2) establishes a statute of limitations subject to equitable tolling under *Irwin*. *See Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1340–44 (Fed. Cir. 2011) (en banc); *see also id.* at 1341 n.9. We held that "[t]he statute of limitations begins to run on a specific statutory date: the date of occurrence of the first symptom or manifestation of onset of the vaccine-related injury recognized as such by the medical profession at large." *Id.* at 1340. We reached this conclusion because "the plain words of the statute trigger the statute of limitations on the date of the first symptom or manifestation of onset of the injury claimed," and Congress did not intend for a discovery rule to apply. *See id.* at 1336, 1340. The prescribed period is a statute of limitations even though the underlying claim is not based on a breach of duty, either by the government or the manufacturer. *See Zatuchni*, 516 F.3d at 1316; H.R. Rep. 99-908, at 12, *reprinted in* 1986 U.S.C.C.A.N. at 6353.

The second of Judge Chen's factors—the involvement of a "separate remedial entity," Chen Op. 13—is also inconsistent with cases in the administrative context, in which the Supreme Court and other courts have made clear that

a statute governing the timeliness of a claim to an agency for payment from that agency is a statute of limitations. *See United States v. Williams*, 514 U.S. 527, 534 & n.7 (1995) (26 U.S.C. § 6511(a) is a "statute of limitations" that "bar[s] . . . tardy" tax refund claims filed with the Internal Revenue Service); *Colvin v. Sullivan*, 939 F.2d 153, 156 (4th Cir. 1991) (referring to 42 U.S.C. § 1320b-2(a), which provides for a two-year period during which states are permitted to file claims with the federal government for expenditures made in carrying out a state plan under specific subchapters of the codification of the Social Security Act, as a "statute of limitations"); *cf. Warren v. Off. of Pers. Mgmt.*, 407 F.3d 1309, 1316 (Fed. Cir. 2005) (referring to the two-year period "after the date on which the marriage of [a] former spouse . . . is dissolved" to make an election with the Office of Personal Management to provide a survivor annuity for the former spouse, *see* 5 U.S.C. § 8339(j)(3), as a "statute of limitations").

## B

Judge Chen offers an alternative theory—that § 5110(b)(1) is not a statute of limitations because it "does not eliminate a veteran's ability to collect benefits for [a service-connected] disability," Chen Op. 13, but instead "forgives a veteran's temporary delay in filing a claim in the immediate aftermath of a veteran's transition back to civilian life upon discharge from military service," *id.* at 19 (emphasis omitted). In my view, this analysis blinks reality.

The claim for benefits here has two components: (1) a retrospective claim for benefits for past disability, and (2) a prospective claim for future benefits. The statute imposes no statute of limitations for prospective benefits, and a veteran may be entitled to forward-looking benefits after the one-year period prescribed by § 5110(b)(1) runs. *See Henderson v. Shinseki*, 562 U.S. 428, 431 (2011) ("A veteran faces no time limit for filing a claim . . . ."). But § 5110(b)(1)

does impose what is clearly a one-year statute of limitations for retrospective claims—making retrospective benefits unavailable unless the claim is filed within one year after discharge.  Section 5110(b)(1) is a "more limited statute of limitations," *see Young v. United States*, 535 U.S. 43, 48 (2002), applicable only to retrospective benefit claims, but it is a statute of limitations nonetheless.  Section 5110(b)(1) "is a limitations period because it prescribes a period within which certain rights . . . may be enforced." *See id.* at 47.  It bars retroactive benefits if the claim is filed more than a year after discharge.

This approach to periods of limitations for claims for benefits is not unusual.  Government benefits programs often provide that an individual qualifying for benefits may recover future benefits once an application is filed but is limited in the recovery of past benefits to a set period before the filing of the application.  One example is the statute providing for Social Security disability benefits, which provides no limit on the recovery of future benefits once an application has been filed but imposes a twelve-month limitations periods on the recovery of past benefits—in other words, a statute of limitations. *Begley v. Weinberger*, 400 F. Supp. 901, 911 (S.D. Ohio 1975) (noting a "one-year statute of limitations upon the availability of retroactive disability insurance benefits" established by 42 U.S.C. § 423(b)).[2]

---

[2]    The cases Judge Chen cites, both decided before *Irwin*, are not to the contrary. *See* Chen Op. 31 (citing *Yeiter v. Sec'y of Health & Hum. Servs.*, 818 F.2d 8, 10 (6th Cir. 1987); and then citing *Sweeney v. Sec'y of Health, Ed. & Welfare*, 379 F. Supp. 1098, 1100 (E.D.N.Y. 1974)).

*Yeiter* rejected the argument that "Congress did not intend the one-year limit on retroactive benefits [in 42 U.S.C. § 423(b)] to apply where the failure to file for benefits arises

Section 5110(b)(1) is nearly the same as the statutes of limitation in copyright actions and patent infringement, where the statutes bar recovery for past events if the claim is not filed within a specified period, but permit recovery for future acts. The copyright limitations period is governed by 17 U.S.C. § 507,[3] which the Supreme Court has described as a "limitations period [that] allows plaintiffs during [the copyright] term to gain retrospective relief running only three years back from the date the complaint was filed." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 672 (2014); *see also id.* at 670 (describing copyright limitations period as a "a three-year look-back limitations period").[4] Thus, "the infringer is insulated from liability for earlier infringements of the same work." *Id.* at 671.

Likewise, § 5110(b)(1) is similar to the limitations period in patent infringement actions, 35 U.S.C. § 286,[5] which "represents a judgment by Congress that a patentee

---

from the disability itself." 818 F.2d at 9. *Sweeney* held that "equitable considerations [were] irrelevant" to the application of § 423 "to this case." 379 F. Supp. at 1100–01. Neither held that § 423(b) is not a statute of limitations.

   [3] "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).

   [4] The copyright statute of limitations has been held to be subject to equitable tolling. *See Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340 (5th Cir. 1971) ("[T]he intent of the drafters [of the predecessor of § 507(b)] was that the limitations period would affect the remedy only, not the substantive right, and that equitable considerations would therefore apply to suspend the running of the statute.").

   [5] "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286.

may recover damages for any infringement committed within six years of the filing of the claim." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, LLC, 137 S. Ct. 954, 961 (2017). In so holding, the Supreme Court rejected the argument that § 286 was not a "<u>true</u> statute of limitations" because it "runs backward from the time of suit." *Id.* at 961–62 (citing *Petrella*, 572 U.S. at 672).[6]

Judge Chen attempts to distinguish these cases on the ground that "§ 5110(b)(1) establishes the effective date of a <u>single</u> benefits claim for an ongoing disability, whereas an ongoing course of infringement in *Petrella* and *SCA Hygiene* comprises a 'series of discrete infringing acts,' <u>each</u> of which is a distinct harm giving rise to an independent claim for relief that starts a new limitations period." Chen Op. 20 (quoting *Petrella*, 572 U.S. at 671–72). The same is true here. The claim is not a single benefits claim, but a claim for a series of payments allegedly due. *See* 38 U.S.C. § 1110 (establishing basic entitlement for disability compensation); *id.* § 1114 (providing monthly rates for disability compensation); *id.* § 1115 (providing additional compensation for dependents); *see also* Veterans' Compensation Cost-of-Living Adjustment Act of 2020, Pub. L. 116-178, 134 Stat. 853 (providing cost-of-living adjustment).

The Supreme Court's decision in *Young*, 535 U.S. 43, also supports the view that § 5110(b)(1) is a statute of limitations. In *Young*, the Supreme Court considered whether a three-year lookback period provided by § 507 of the Bankruptcy Code was a statute of limitations. *See* 11 U.S.C. § 507(a)(8)(A)(i). Under this lookback period, "[i]f the IRS has a claim for taxes for which the return was due within

---

[6]    The holdings of *Petrella* and *SCA Hygiene* addressed whether the provisions were statutes of limitations because that affected application of the doctrine of laches. *See Petrella*, 572 U.S. at 686; *SCA Hygiene*, 137 S. Ct. at 967.

three years before the bankruptcy petition was filed, the claim enjoys eighth priority . . . and is nondischargeable in bankruptcy." *Young*, 535 U.S. at 46. "The period thus encourages the IRS to protect its rights—by, say, collecting the debt, or perfecting a tax lien—before three years have elapsed." *Id.* at 47 (citations omitted). "If the IRS sleeps on its rights, its claim loses priority and the debt becomes dischargeable." *Id.* The Supreme Court acknowledged that, "unlike most statutes of limitations, the lookback period bars only *some*, and not *all*, legal remedies for enforcing the claim," *id.* (footnote omitted), and noted that "[e]quitable remedies may still be available," *id.* at 47 n.1. That qualification "ma[de] it a more limited statute of limitations, but a statute of limitations nonetheless" subject to equitable tolling. *Id.* at 48.

In determining that the lookback period was a statute of limitations, the Supreme Court found it significant that "the lookback period serve[d] the same 'basic policies [furthered by] all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities.'" *Young*, 535 U.S. at 47 (second alteration in original) (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).

Section 5110(b)(1), like the provision at issue in *Young*, serves the same basic policies of limitations periods. It encourages veterans to file for disability compensation benefits within a year of their discharge, or else lose retroactive benefits that they would otherwise be entitled to. It limits veterans' "opportunity for recovery" and the government's "potential liabilities," *see Rotella*, 528 U.S. at 555, to only forward-looking benefits if the filing deadline is missed.

Judge Chen attempts to find support in the Supreme Court's *Lozano* decision. *Lozano* involved Article 12 of the Hague Convention on the Civil Aspects of International Child Abduction, which was held not to be a statute of limitations. "When a parent abducts a child and flees to

another country," the Hague Convention "generally requires that country to return the child immediately if the other parent requests return within one year." *Lozano*, 572 U.S. at 4. After the one-year period has expired, under Article 12, the court "shall also order the return of the child, unless it is demonstrated that the child is now settled." *Id.* at 15 (citation and quotation marks omitted). *Lozano* did not involve a statute, but rather a treaty provision, which "was not adopted against a shared background of equitable tolling." *Id.* at 11. Also, this treaty provision in *Lozano* did not provide a cut-off for monetary recovery, unlike § 5110(b)(1), which provides "certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities" by providing a cut-off date for retroactive disability benefits. *See Rotella*, 528 U.S. at 555. *Lozano* has no relevance here.

Nor is this case similar to *Hallstrom*, on which Judge Chen also relies. As noted above, *Hallstrom* concerned a 60-day notice provision of the Resource Conservation and Recovery Act of 1976. 493 U.S. at 22 (citing 42 U.S.C. § 6972(b)(1) (1982)). The Supreme Court held that this "60-day notice provision" was "[u]nlike a statute of limitations" because "petitioners [had] full control over the timing of their suit: they need only give notice to the appropriate parties and refrain from commencing their action for at least 60 days." *Id.* at 27. Section § 5110(b)(1) is not a notice provision.

In sum, § 5110(b)(1) is a statute of limitations, and the *Irwin* rebuttable presumption of equitable tolling applies. As Judge Newman has noted, "[t]he time period of § 5110(b)(1) is not a jurisdictional restriction, and its blanket immunization from equitable extension, whatever the circumstances, appears to be directly contrary to the legislative purpose." *Butler v. Shinseki*, 603 F.3d 922, 928 (Fed. Cir. 2010) (Newman, J., concurring in the result).

IV

"To be sure, *Irwin*'s presumption is rebuttable." *United States v. Kwai Fun Wong*, 575 U.S. 402, 419 (2015). Judge Chen concludes that even if the presumption of equitable tolling applies to § 5110(b)(1), the presumption has been rebutted. I disagree. Congress has not clearly indicated a general prohibition against equitable tolling as to § 5110(b)(1).

The Supreme Court has identified several factors that determine whether the equitable tolling presumption has been rebutted, and here, almost all of the factors signal that there is no general prohibition against equitable tolling.[7]

The first factor is the language of the statute. The language of a statute of limitations may indicate that it is jurisdictional, in which case a court must enforce the limitation "even if equitable considerations would support extending the prescribed time period." *Kwai Fun Wong*, 575 U.S. at 408–09. In determining whether a statute is jurisdictional, courts have often held that it does not matter if a statute's language is "mandatory" or "emphatic" if "text speaks only to a claim's timeliness, not to a court's power." *Id.* at 410–11.

Section 5110(b)(1) is not jurisdictional, as Judge Chen concedes. Chen Op. 36–37. Nevertheless, Judge Chen relies on the use of the phrase "[u]nless specifically provided otherwise in this chapter" in § 5110(a)(1), concluding that by using that term, Congress "implicitly intended to preclude the general availability of equitable tolling by

---

[7]    Our decision in *Cloer* identified many of the same factors. *See* 654 F.3d at 1342. The Supreme Court has identified further factors since we decided *Cloer* that I discuss here. *See generally Auburn*, 568 U.S. 145; *Kwai Fun Wong*, 575 U.S. 402.

explicitly including a more limited, specific selection of equitable circumstances under which a veteran is entitled to an earlier effective date and specifying the temporal extent of the exceptions for those circumstances." *Id.* at 37–38.

In *Kwai Fun Wong*, the Supreme Court held that the use of the phrase "shall be forever barred" in the Federal Tort Claims Act limitations period, 28 U.S.C. § 2401(b), though "mandatory" and "emphatic," "[spoke] only to a claim's timeliness, not to a court's power," and did not designate § 2401(b) as a jurisdictional time bar not subject to equitable tolling. 575 U.S. at 410–11. Here, too, the phrase "[u]nless specifically provided otherwise in this chapter" in § 5110(a)(1), though mandatory and emphatic, does not clearly foreclose equitable tolling of § 5110(b)(1).

Second, the detailed nature of a statute may suggest that Congress did not intend for a statute of limitations to be equitably tolled. "Ordinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied 'equitable tolling' exception." *United States v. Brockamp*, 519 U.S. 347, 350 (1997). A statute that "uses language that is not simple" and "sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions" could indicate Congress's intent to preclude equitable tolling. *Id.*

Judge Chen determines that the language and structure of § 5110's subsections are "highly detailed" and "technical." Chen Op. 39 (quoting *Brockamp*, 519 U.S. at 350). While it is true that § 5110 is a detailed statute, it "use[s] fairly simple language." *See Brockamp*, 519 U.S. at 350. For example, § 5110(b)(1) simply states that "[t]he effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release." 38 U.S.C. § 5110(b)(1). Section § 5110, even considered as a whole, is

not as detailed as the tax statute at issue in *Brockamp*, 26 U.S.C. § 6511, where equitable tolling was disallowed. This factor does not weigh against equitable tolling of § 5110(b)(1).

Third, we consider if a statute of limitations has "explicit exceptions to its basic time limits," which may preclude equitable tolling. *Brockamp*, 519 U.S. at 351. Judge Chen concludes that "§ 5110's enumerated exceptions confirm that Congress has already considered which equitable considerations may provide a retroactive effective date and declined to provide the relief Mr. Arellano seeks." Chen Op. 41.

We noted in *Cloer* that "exceptions to statutes of limitations do not necessarily rebut the bedrock *Irwin* presumption in favor of equitable tolling," and that "an exception may signal a beneficent Congressional act, not a rebuttal of the *Irwin* presumption." 654 F.3d at 1343. Although § 5110(b)(1) is itself an exception to the general effective date rule of § 5110(a)(1), there are no explicit exceptions to the one-year period in § 5110(b)(1).[8]

Nor do the other provisions of § 5110 speak to equitable tolling, with the exception of § 5110(b)(4), which provides a retroactive period of disability pension benefits for a veteran who is "prevented by a disability from applying for disability pension." 38 U.S.C. § 5110(b)(4)(B).

Apart from § 5110(b)(4), this is not a situation in which the statute "has already effectively allowed for equitable

---

[8]    Under the VA's regulation, "[t]ime limits within which claimants or beneficiaries are required to act to perfect a claim or challenge an adverse VA decision may be extended for good cause shown." 38 C.F.R. § 3.109(b) (2020). The government argues that this regulation does not apply to § 5110(b)(1), and Mr. Arellano does not contend otherwise.

16                                          ARELLANO v. MCDONOUGH

tolling." *See United States v. Beggerly*, 524 U.S. 38, 48 (1998). The other § 5110 provisions discuss situations—for example, when a child turns 18, 38 U.S.C. § 5110(e)(2); when there has been a report or finding of death of a service member, *id.* § 5110(j); or when there has been an annulment of marriage, *id.* § 5110(k)—which do not on their face relate to equitable tolling or indicate Congress's intent to preclude equitable tolling of § 5110(b)(1).

With respect to § 5110(b)(4), it is true that § 5110(b)(4) speaks to one limited aspect of equitable tolling (tolling for disability), but only in the unique context of disability pension and not disability compensation. While this may indicate a desire to limit equitable tolling for mental disability in specific circumstances (as discussed below), this can hardly be read as evincing a desire by Congress to eliminate equitable tolling generally as to disability compensation. It is simply an example of "a beneficent Congressional act, not a rebuttal of the *Irwin* presumption." *See Cloer*, 654 F.3d at 1343.

Fourth, Congress is more likely to have intended a statute of limitations that governs a statutory scheme "in which laymen, unassisted by trained lawyers, initiate the process" to be subject to equitable tolling, *Zipes*, 455 U.S. at 397 (quoting *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)), in contrast to statutory schemes that govern sophisticated parties "assisted by legal counsel," *Auburn*, 568 U.S. at 160.

The fact that "the veteran is often unrepresented during the claims proceedings," *Shinseki v. Sanders*, 556 U.S. 396, 412 (2009), especially, as here, "in the early stages of the application process," when "the veteran is almost always unassisted by legal counsel," *Hensley v. West*, 212 F.3d 1255, 1262 (Fed. Cir. 2000), suggests that Congress

intended for equitable tolling to be available.[9]  This is in contrast to situations such as in *Auburn*, where the statutory scheme at issue governed reimbursements to healthcare providers.  The statute "[was] not designed to be unusually protective of claimants," was not one "in which laymen, unassisted by trained lawyers, initiate the process," and "applie[d] to sophisticated institutional providers assisted by legal counsel."  568 U.S. at 160–61 (citations and internal quotation marks omitted) (holding that equitable tolling did not apply to the 180-day statutory deadline for health care providers to file appeals with the Provider Reimbursement Review Board under 42 U.S.C. § 1395oo(a)(3)).

Fifth, we consider the subject matter of the statute.  If the statute of limitations "is contained in a statute that Congress designed to be 'unusually protective' of claimants," that will suggest Congress intended for equitable tolling to apply.  *Bowen v. City of New York*, 476 U.S. 467, 480 (1986) (quoting *Heckler v. Day*, 467 U.S. 104, 106 (1984)).

"[T]he uniquely pro-claimant nature of the veterans compensation system" suggests that Congress intended at

---

[9]    *See also* Department of Veterans Affairs Board of Veterans' Appeals, Annual Report Fiscal Year 2020, 36, https://www.bva.va.gov/docs/Chairmans_Annual_Rpts/BVA2020AR.pdf (24.4% of legacy appeals before the Board of Veterans' Appeals ("Board") in fiscal year 2020 had attorney representation); Connie Vogelmann, Admin. Conf. of the United States, *Self-Represented Parties in Administrative Hearings* 29 (Oct. 28, 2016), https://www.acus.gov/sites/default/files/documents/Self-Represented-Parties-Administrative-Hearings-Final-Report-10-28-16.pdf (10.5% of claimants before the Board between fiscal years 2011–2015 had attorney representation).

18                                   ARELLANO v. MCDONOUGH

least some form of equitable tolling to be available. *Hensley v. West*, 212 F.3d 1255, 1262 (Fed. Cir. 2000). The veterans' claims process is "designed to be 'unusually protective' of claimants," *see Bowen*, 476 U.S. at 480, and "is designed to function throughout with a high degree of informality and solicitude for the claimant," *Henderson*, 562 U.S. at 431 (quoting *Walters v. Nat'l Assn. of Radiation Survivors*, 473 U.S. 305, 311 (1985)).[10]

"Congress has expressed special solicitude for the veterans' cause." *Shinseki*, 556 U.S. at 412. "A veteran, after all, has performed an especially important service for the Nation, often at the risk of his or her own life." *Id.* "[T]he veterans benefit system is designed to award 'entitlements to a special class of citizens, those who risked harm to serve and defend their country. This entire scheme is imbued with special beneficence from a grateful sovereign.'" *Barrett v. Principi*, 363 F.3d 1316, 1320 (Fed. Cir. 2004) (quoting *Bailey v. West*, 160 F.3d 1360, 1370 (Fed. Cir. 1998) (Michel, J., concurring)).[11]

---

[10]    Although *Walters* noted in passing that "[t]here is no statute of limitations" in the veterans' claims process generally, 473 U.S. at 311, the court appears to have been referring to the fact that "[a] veteran faces no time limit for filing a claim," *Henderson*, 562 U.S. at 431.

[11]    In *Bailey*, we held that the 120-day period for a claimant to appeal an adverse decision of the Board to the Court of Appeals for Veterans Claims ("Veterans Court"), 38 U.S.C. § 7266, is subject to equitable tolling. 160 F.3d at 1368 (en banc). *Bailey* and its progeny, including *Jaquay v. Principi*, 304 F.3d 1276 (Fed. Cir. 2002) (en banc), were overruled by our en banc decision in *Henderson v. Shinseki*, 589 F.3d 1201, 1203 (Fed. Cir. 2009) (en banc), reversed in *Henderson v. Shinseki*, 562 U.S. 428, 441–42 & n.4 (2011). The effect of the Supreme Court's

ARELLANO v. MCDONOUGH                                    19

The veterans benefits system is unlike the tax collection system, which the Supreme Court held was not subject to equitable tolling because "Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system." *Brockamp*, 519 U.S. at 352–53.

"[O]nce a claim is filed, the VA's process for adjudicating it at the regional office and the Board is *ex parte* and nonadversarial." *Henderson*, 562 U.S. at 431; *see* 38 C.F.R. §§ 3.103(a), § 20.700(c) (2020). "In the context of the nonadversarial, paternalistic, uniquely pro-claimant veterans' compensation system, and consistent with our decision in *Bailey*, the availability of equitable tolling pursuant to *Irwin* should be interpreted liberally with respect to filings during the non-adversarial stage of the veterans' benefits process." *Jaquay*, 304 F.3d at 1286.

These factors, as well as "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor," *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 n.9 (1991), lead to the conclusion that there is no clear indication that Congress intended to broadly foreclose equitable tolling in § 5110(b)(1), and that equitable tolling should be available in appropriate cases.

Nor does the fact that Congress amended § 5110 four times since *Andrews* indicate approval of *Andrews*. The presumption that reenactment of a statute ratifies the settled interpretation of that statute is strongest when there is evidence that "Congress was indeed well aware of [the prior interpretation]." *Lindahl v. OPM*, 470 U.S. 768, 782

---

decision was to reinstate our decision in *Bailey*, and we have since reaffirmed that "[t]he filing deadline of § 7266 is not jurisdictional and may be tolled where appropriate." *James v. Wilkie*, 917 F.3d 1368, 1372 (Fed. Cir. 2019).

(1985); *see also Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978). However, "[r]e-enactment—particularly without the slightest affirmative indication that Congress ever had the [prior judicial interpretation] decision before it—is an unreliable indicium at best." *C.I.R. v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955); *see also Brown v. Gardner*, 513 U.S. 115, 121 (1994) (declining to find that reenactment of a statute ratified the VA's interpretation of that statute in part because "the record of congressional discussion preceding reenactment ma[de] no reference to the VA regulation [interpreting the statute at issue], and there is no other evidence to suggest that Congress was even aware of the VA's interpretive position."); *Micron Technology, Inc. v. U.S.*, 243 F.3d 1301, 1310 (Fed. Cir. 2001). There is not the slightest indication that Congress when it amended § 5110 was aware of our decision in *Andrews*, and there is no basis for concluding that Congress intended to approve that decision.[12] Nor is this a well-settled administrative interpretation as in *Auburn*, 568 U.S. 145. *Auburn* concerned Congress's delegation of rulemaking authority relating to a specific statutory provision to the Secretary of Health and Human Services, and the Secretary's implementation of that authority. 568 U.S. at 159. Here, by contrast, we are dealing with the decision of a single circuit court, which has not been reviewed by the Supreme Court.

Judge Chen's approach is particularly difficult to defend because it would bar equitable tolling in all cases,

---

[12] This is especially true because, as Judge Newman pointed out in her concurrence in *Butler*, it is unclear whether the broad language in *Andrews* was even relevant to its resolution of the precise issue for which it is now cited to us. 603 F.3d at 927 ("The Veterans Court enlarged *Andrews* beyond its premises, in holding that tolling of the one-year term of retroactivity under § 5110(b)(1) is never available.").

including cases where equitable tolling could be argued to be particularly important and appropriate. This approach forecloses the possibility of equitable tolling entirely, even in circumstances in which there is no indication that Congress intended strict enforcement of the one-year period of § 5110(b)(1).

V

The fact that the statute does not foreclose equitable tolling in the case of § 5110(b)(1) does not suggest that equitable tolling is available in every circumstance. While the statute does not indicate a general prohibition against equitable tolling, "[f]ederal courts have typically extended equitable relief only sparingly." *Irwin*, 498 U.S. at 96. To determine when equitable tolling is justified, we apply well-established equitable tolling principles to the circumstances presented. Such analysis is done on a case-by-case basis, though general principles will often guide the analysis in a broad swath of cases.

Equitable tolling analysis begins with the governing statutory scheme. Even where the *Irwin* presumption has not been rebutted, the statute and statutory scheme are instructive as to the particular circumstances that will justify equitable tolling. *See Mapu v. Nicholson*, 397 F.3d 1375, 1381 (Fed. Cir. 2005) (concluding that "Congress's explicit decision not to broaden the postmark rule by extending it to delivery services other than the Postal Service must trump any extension of equitable tolling to this case"); *Cloer*, 654 F.3d at 1345 (no relief under equitable tolling because of "a policy calculation made by Congress not to afford a discovery rule to all Vaccine Act petitioners and Dr. Cloer's failure to point to circumstances that could justify the application of equitable tolling to forgive her untimely claim"). The statutory scheme here helps inform the scope of equitable tolling on the ground of mental disability.

First, an individual who lacks mental capacity may have a caregiver sign a form for benefits on his or her behalf. Under 38 U.S.C. § 5101, as amended in 2012,[13] if an "individual lacks the mental capacity . . . to provide substantially accurate information needed to complete a form; or . . . to certify that the statements made on a form are true and complete," 38 U.S.C. § 5101(e)(1),[14] then "a form filed . . . for the individual may be signed by a court-appointed representative, a person who is responsible for the care of the individual, including a spouse or other relative, or . . . agent authorized to act on behalf of the individual under a durable power of attorney," *id.* § 5101(a)(2).

In addition, 38 C.F.R. § 3.155 provides that "some person acting as next friend of claimant who is not of full age or capacity may indicate a claimant's desire to file a claim for benefits by submitting an intent to file a claim to [the] VA." 38 C.F.R. § 3.155(b) (2020). "Upon receipt of the intent to file a claim, [the] VA will furnish the claimant with the appropriate application form prescribed by the Secretary." *Id.* Thus, § 3.155 "provide[s] a way for claimants who cannot engage in a legal contract due to age or disability to be represented by someone (or next friend) who can do so on their behalf." Standard Claims and Appeals

---

[13]    *See* Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012, Pub. L. 112-154, Title V, § 502(a), 126 Stat. 1165, 1190.

[14]    38 U.S.C. § 5101(d) (2020) was renumbered as § 5101(e) in 2021. *See* Johnny Isakson and David P. Roe, M.D. Veterans Health Care and Benefits Improvement Act of 2020, Pub. L. 116-315, § 2006(a), 134 Stat. 4932 (enacted Jan. 5, 2021).

Forms, 79 Fed. Reg. 57,660, 57,667 (Sept. 25, 2014) (Final Rule).[15]

In the context of the Vaccine Act, the provision that allows a "legal representative," 42 U.S.C. § 300aa-11(b)(1)(A), to file a petition on the behalf of a person who is disabled, "does not foreclose the availability of equitable tolling for claimants with mental illness," under all circumstances. *K. G. v. Sec'y of Health & Hum. Servs.*, 951 F.3d 1374, 1381 (Fed. Cir. 2020). *K.G.* makes clear that the mere fact that a guardian has been appointed for a claimant is a factor in the equitable tolling inquiry, but only one factor. While that fact is true for veterans as well, it is a more important factor in the veteran's context than in Vaccine Act cases. That is because Congress has gone further in the veteran's context, by allowing any person on the claimant's behalf to indicate an intent to file a claim, and making a mere indication of a desire to file a claim sufficient to start the claims process. *See* 38 C.F.R. § 3.155(b) (2020).

Thus, absent special circumstances demonstrating an inability of the caregiver to at least indicate an intent to

---

[15] A similar provision existed under the informal claim system, which ended in 2015. *See Shea v. Wilkie*, 926 F.3d 1362, 1366 n.3 (Fed. Cir. 2019). Under the informal claim system, "[a]ny communication or action, indicating an intent to apply for one or more benefits under the laws administered by [the VA], from a claimant . . . or some person acting as next friend of a claimant who is not sui juris" could be "considered an informal claim," which was a longstanding practice of the VA. 26 Fed. Reg. 1561, 1570, (codified at 38 C.F.R. § 3.155(a)) (Feb. 24, 1961). *Compare id. with* 38 C.F.R. § 3.155(a) (2014).

file a claim (which can trigger the claim filing process),[16] I believe it would be only the rare case where a mentally disabled veteran with a caregiver would be entitled to equitably toll § 5110(b)(1).

Second, 38 U.S.C. § 5110(b)(4) provides a one-year period for a retroactive effective date for disability pension (a form of compensation distinct from service-connected benefits).[17]  That subsection provides:

> (A) The effective date of an award of disability pension to a veteran described in subparagraph (B) of this paragraph shall be the date of application <u>or the date on which the veteran became permanently and totally disabled, if the veteran applies for a retroactive award within one year from such date, whichever is to the advantage of the veteran.</u>

> (B) A veteran referred to in subparagraph (A) of this paragraph is a veteran who is permanently and totally disabled and who is prevented by a disability from applying for disability pension for a period of at least 30 days beginning on the date on

---

[16]   For claims of equitable tolling prior to 2015, as is the case here, the relevant inquiry would be whether there are special circumstances demonstrating an inability of the caregiver to submit an informal claim.  *See* 38 C.F.R. § 3.155(a) (2014).

[17]   Disability pension is available for veterans who are "permanently and totally disabled from non-service-connected disability," 38 U.S.C. § 1521(a), and pension is need-based, so veterans who exceed a maximum annual income or net worth set by regulation will not qualify.  *See id.* § 1522; 38 C.F.R. §§ 3.274, 3.275 (2020); *see also* H.R. Rep. No. 79-2425 (June 28, 1946); Act of July 9, 1946, Pub. L. No. 79-494, 60 Stat. 524.

which the veteran became permanently and totally disabled.

38 U.S.C. § 5110(b)(4) (emphasis added).

The predecessor to subsection (A) of § 5110(b)(4) was adopted[18] based on a proposal from the VA to address "problems resulting from the veteran's disability [that] delays [the veteran's] application for the benefit," whereby "the very condition upon which entitlement may depend may also prevent prompt application for the benefit." H.R. Rep. 93-398, 1973 U.S.C.C.A.N. 2759, 2772 (July 25, 1973) (letter dated May 10, 1973, from Donald E. Johnson, Administrator of Veterans Affairs). The VA's proposal "would alleviate this situation by affording the disabled veteran a year from onset of disability to apply for pension and, if he is otherwise eligible, authorize payment retroactively to the date on which he became permanently and totally disabled." *Id.* "The 1-year period prescribed by the proposal within which to apply for disability pension [was] considered reasonable . . . ." *Id.*

This provision was further amended in 1984 in part to add subsection (B), which specified that veterans who qualify for the one-year lookback period for disability pension are veterans "who [are] permanently and totally disabled and who [are] prevented by a disability from applying for disability pension for a period of at least 30 days beginning on the date on which the veteran became permanently and totally disabled." Deficit Reduction Act of 1984, Pub. L. 98–369, sec. 2501, 98 Stat. 494, 1116–17.[19]

---

[18]    The predecessor to § 5110(b)(4)(A) was enacted in 1973 as 38 U.S.C. § 3010(b)(2). *See* Act of Dec. 6, 1973, Pub. L. 93-177, sec. 6, 87 Stat. 694, 696.

[19]    The predecessor to § 5110(b)(4)(B) was enacted in 1984 as 38 U.S.C § 3010(b)(3)(B). Deficit Reduction Act of 1984, Pub. L. 98–369, sec. 2501(a)(1), 98 Stat. at 1116.

26                                                          ARELLANO v. MCDONOUGH

While pension benefits are different from disability benefits, this provision is instructive because it indicates Congressional willingness to delay veterans' filing obligations where a disability makes meeting them difficult or impossible, but not to do so indefinitely, or even for a substantial period of time.

Against this backdrop, I now turn to the particular circumstances presented here.[20]   Mr. Arellano's brother, Pedro Arellano Lamar, has been Mr. Arellano's "caregiver since [Mr. Arellano] returned home mentally disabled in November 1981." J.A. 554; *see also id.* at 565. Yet, the VA did not receive Mr. Arellano's application until June 3, 2011. According to Mr. Arellano's counsel, Mr. Arellano's brother, "acting as guardian ad litem," filed the application on Mr. Arellano's behalf. Oral Arg. 41:25–42:06, 43:27–44:10, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1073_02042021.mp3. There is no allegation that Mr. Lamar was somehow prevented from filing, or faced obstacles in his attempt to file, Mr. Arellano's request for benefits sooner. Unlike in *K. G.*, there is no claim that Mr. Arellano was estranged from Mr. Lamar or refused to interact with him. *See* 951 F.3d at 1377. Indeed, Mr. Arellano signed the application himself at Mr. Lamar's direction. There is nothing in the record that justifies the inordinate thirty-year delay in filing the application at issue.

---

[20]   We have recognized that in determining the application of equitable tolling, "[w]here the facts are undisputed, all that remains is a legal question, even if that legal question requires the application of the appropriate standard to the facts of a particular case." *Former Employees of Sonoco Prod. Co. v. Chao*, 372 F.3d 1291, 1294–95 (Fed. Cir. 2004) (collecting cases). Because we assume the facts are as Mr. Arellano describes them, we address the availability of tolling in the first instance.

Because Mr. Arellano had a caregiver who could have filed (and indeed did later file) an application on Mr. Arellano's behalf, and no special circumstances are alleged, equitable tolling on the ground of Mr. Arellano's mental disability is not warranted, especially for such an untimely filing. Equitable tolling for mental disability is not available in this case.

## CONCLUSION

I would hold that § 5110(b)(1) is a statute of limitations that is subject to the rebuttal presumption of equitable tolling under *Irwin*. I would also hold that the presumption has not been rebutted as to equitable tolling, but that equitable tolling is not available to Mr. Arellano's specific circumstances. Thus, I concur in the judgment.